### DETERMINED BY THE

# SUPREME COURT OF APPEALS

### OF

# WEST VIRGINIA

## CHARLESTON

THE BANK OF GAULEY v. C. W. OSENTON, *Executor.*

Submitted October 10, 1922.   Decided October 17, 1922.

1.  EVIDENCE—*Whether Entered by Consent of Parties Determined From Face of Record.*

    Whether a judgment was entered by consent of the parties is determined from the face of the record.   (p. 4).

2.  SAME—*Where Record Shows Obtained.*

    A judgment which the record shows was obtained by default, cannot by affidavit be shown to be a ·consent-judgment. (p. 4).

3.  JUDGMENT—*Where Form for Default Judgment was Agreed to by Counsel, it was Default, and Not Consent Judgment.*

    Where an order form for judgment by ·default is prepared by counsel for plaintiff, presented to the attorney for the defendant, the abbreviation "O. K." endorsed on the back of the form, followed by the signatures of the attorneys for both parties, and entered without any notation of consent on the face of the record, and there is no appearance of the defendant noted, the judgment is a judgment by default and not a consent-judgment.   (p. 6).

4.  SAME—*Court May Correct Judgment During Term at Which Rendered or on Motion Then Made and Continued to Subsequent Term.*

    During the term, at which a judgment is entered, the court, on motion of one of the parties, or on its own motion, may make any correction of the judgment, either as to matters of

fact or law and where a party to the action, during the term, moves to correct the judgment, and the motion, by order, is continued to a subsequent term, to be then heard and determined, the court may at a subsequent term make any order therein which it might have made during the term at which the judgment was entered.  (p. 6).

5.   EXECUTORS AND ADMINISTRATORS—*Contract for Benefit of Estate by Executor Without Authority Binds Him Personally.*

Generally, an executor can not charge his decedent's estate by any contracts made by himself, although for the benefit ot the estate, unless he is authoried to do so by will; and such contracts, if made without authority, bind the executor in his individual capacity only.  (p. 7).

Error to Circuit Court, Fayette County.

Action by the Bank of Gauley against C. W. Osenton, executor, etc.   From a judgment against defendant personally, he brings error.

*Judgment affirmed.*

*W. L. Lee,* for plaintiff in error.
*Dillon & Nuckolls,* for defendant in error.

MEREDITH, JUDGE:

Defendant, C. W. Osenton, obtained a writ of error to the judgment of the circuit court of Fayette County which was rendered against him personally on a note made by him in favor of the Bank of Gauley, and signed ''C. W. Osenton, Executor of W. H. Hill.''

The action was by way of notice of motion for judgment and was returnable April 20, 1921.   The notice ran ''To C. W. Osenton, Executor of the Estate of W. H. Hill, deceased.''   On the return day an order was entered ''that the plaintiff, the Bank of Gauley, do recover of and from the said defendant, C. W. Osenton, Executor of the estate of W. H. Hill, deceased, to be satisfied out of the goods and chattels of the said W. H. Hill, deceased, in the hands of the said C. W. Osenton, as such executor, the sum of $4,997.65,'' with interest and costs.   The judgment shows on its face that it was taken by default.

At the same term of court, on May 7, 1921, the plaintiff, under provisions of section 5, chapter 134, Code, moved the court to correct the judgment so as to make it a personal judgment against C. W. Osenton, instead of a judgment against him in his representative capacity. Notice of this motion was served on defendant, and on the return day, defendant objected to the filing of the motion which was in writing, but the court overruled his objection, filed it and it was continued to be heard at a special or regular term. It was heard at a subsequent term and on the hearing, plaintiff and defendant both filed certain affidavits. From these it appears that on April 20, 1921, the return day of the original notice of motion for judgment, plaintiff's attorney prepared an order form taking judgment against the defendant personally, presented the form to attorney for defendant who objected to it because it was a form of personal judgment against defendant, instead of being against him in his representative capacity, and plaintiff's attorney being then of opinion that defendant was not personally liable on the note sued on, agreed to change the order to the form in which it was entered, this was done and the form was marked on the back with the abbreviation "O. K." and underneath this abbreviation, counsel for plaintiff and defendant signed their names; the order was then taken by counsel for plaintiff, presented to the court and was entered by the court in the absence of counsel for defendant. Plaintiff's counsel later investigated the law upon the matter and became satisfied that the Bank was entitled to a personal judgment against defendant; the motion to correct the judgment then followed.

It further appears that the moneys borrowed from the Bank for which the note was given were borrowed for the purpose of and used by the executor in paying taxes and other necessary expenses to protect his decedent's estate. The original note was for $600, and was executed in 1909. The amount was increased from time to time as necessity required and defendant promised the Bank to pay the debt from money coming into his hands as executor, and that as shown by reports filed by him as executor in a certain chancery suit he received since the original note was executed

$17,399.68, paid out $15,982.90, but paid no part of the moneys borrowed from the Bank. The affidavit of F. H. Miller, who was cashier of the Bank during the whole of the transactions shows that the money would not have been loaned had he known that the note would not have been binding on the estate of the deceased; at the time the affidavit was made he had ceased to be cashier of the Bank; he insists however that the Bank is entitled to a personal judgment against the defendant. We think it clearly appears that both parties were of opinion when the money was borrowed and when the original judgment was entered that the note was an obligation binding on the estate and not the personal obligation of the defendant.

On February 14, 1922, at a subsequent term, the court, after consideration of the motion, without setting aside the former judgment, entered an order correcting and modifying it, so as to make it a judgment against C. W. Osenton, personally, instead of a judgment against him in his representative capacity, and he assigns error.

First. Defendant urges that the court had no right to make the correction because the original judgment was a consent-judgment. The order however shows on its face that it was taken by default, the judgment reciting: "And thereupon the plaintiff demanding a trial the defendant still failing to appear or plead to this action, though now thrice called in open court," etc. It nowhere shows that the defendant made any appearance, and he certainly could not give his consent of record without putting in an appearance in some way. It has been held by this court that the character of a decree, that is whether it is a consent-decree or not, is to be determined from the face of the decree; said JUDGE GREEN, in *Morris* v. *Peyton*, 29 W. Va. 211, 11 S. E. 201, "What is the character of the decree of February 3, 1882, which has been copied at length in the statement of this case? Of course, its character can only be determined by what is set out on the face of the decree."

In the case of *Hounshell* v. *Hounshell*, 116 Va. 675, 82 S. E. 689, cited by counsel for defendant, the court held an order to be a consent-decree where the words "Agreed to"

followed by the signatures of counsel for all the parties, and then by the signature of the judge, appeared *on the face* of the decree. We do not have the record in that case before us, but the words "Agreed to" followed by the signatures were doubtless entered on the order book by the clerk, and became a part of the permanent record. In the present case the abbreviation "O. K." was written on the back of the order, followed by the signatures of counsel for plaintiff and defendant. We do not think that became a part of the order, nor should this conduct bind either party as entering consent to the order. We know that it is common practice even in hotly contested cases, either at law or in equity, when a final order or decree is to be prepared, for the court to direct the attorney of the prevailing party to prepare the order, the attorney does so, he presents the order to the opposing attorney, who examines it, and if he considers it embodies correctly the decision or judgment of the court, he "O. K.'s" it, initials or writes his name under the abbreviation, usually on the back of the order, for the purpose of informing the court that he has inspected and approved the form; it is "O. K.'d" in like manner by the attorney who prepared it, and is then presented to the court, where it is entered. Often this is done in order to save time of counsel, who do not want to take time to go into court but who do not intend by any such conduct to agree that the order is proper, but that it merely embodies what the court has announced should be in it. To construe an order as a "consent-order" merely because it has endorsed on the back thereof the abbreviation "O. K." followed by the signatures of counsel for the parties would not be in accord with the general practice. In all such cases to do so would preclude a dissatisfied party from prosecuting a writ of error or appeal, as a consent-decree or order waives all errors, and is not subject to review. We are sure that this is not contemplated by the parties under such form of endorsement. To hold otherwise would extend the meaning of the abbreviation beyond its usual interpretation, which may and usually does mean "correct," or "all-right," but either of these words endorsed on a form of judgment or decree would not necessarily mean that the party who wrote it and added his

signature thereto, consented to the entry of the judgment or decree so as to make it a consent-judgment or a consent-decree. Orders are often so endorsed by counsel for parties who at the time fully intend to prosecute a writ of error thereto or petition for appeal therefrom.

It is argued that the affidavits show that the order was entered by consent. They cannot be received for that purpose. The terms of a solemn judgment or decree can not be changed by depositions. *Morris* v. *Peyton,* 29 W. Va. 201, 212, 11 S. E. 954. Then surely they could not be so changed by affidavit. Of course, we do not mean to say that in a proper proceeding a judgment or decree, once entered, might not be set aside for fraud in procuring it, but that is not the case here. The only safe rule is to hold that whether a judgment is one obtained by consent of the parties must appear from the face of the record.

The judgment being a default judgment, and not one entered by consent, the court could correct it at any time during the term, without regard to the provisions of section 5, chapter 134, Code. This being so, its correction was not confined to clerical mistakes; it might correct it as to matters of law; and when it discovered that a judgment was entered against the defendant in his representative capacity instead of against him personally, it had a right to correct it in that regard, if it considered that proper. This could have been done on motion of either of the parties or on the court's own motion. And the fact that the plaintiff mistakenly proceeded under section 5, chapter 134, Code, and gave notice of its motion, makes no difference. The motion was made and continued over to a subsequent term; the continuance of the hearing on the motion carried with it the right of the court to hear it and make the correction at a subsequent term. We therefore hold that the court had a right to correct the judgment, even though the correction was made at a term subsequent to the term at which the judgment was entered.

Second. But it is insisted by counsel for defendant that even if the court had a right to correct the judgment, it wrongfully and without warrant of law corrected it so as to make it a judgment against defendant personally; that

the record shows the defendant borrowed the money in his representative capacity and in that capacity used it to pay taxes and necessary expenses in order to protect his decedent's estate, and therefore he is liable only in that capacity.

The debt was not a debt incurred by the decedent in his life-time and carried forward by renewal, under an implied authority given by the will to his executor to renew the decedent's notes, as was the case in *First National Bank of Salem* v. *Jacobs*, 85 W. Va. 653, 102 S. E. 491. No authority, express or implied, was granted the executor in the present instance to contract new debts; at least no such authority was shown. The decedent's will is not in the record and we can not infer that such authority was granted. The executor took the estate as he found it when he assumed control and was charged with the duty of administering it for the benefit of his decedent's creditors and distributees. He was required by law to reduce it to liquid assets and apply them to the payment of decedent's debts and distribute the balance, if any, among those entitled thereto. The taxes and expenses he paid out of the sums borrowed were claims against the estate which were incurred since his decedent's death; and while they were doubtless proper charges against assets in the executor's hands and he would have had the right to pay them out of such assets, we do not think he had any right to borrow money to pay them on the credit of the estate, and bind the estate as for new debts. "The general rule, subject to few exceptions, is that a personal representative can not charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate, such contracts binding him only in his private capacity." *Thompson* v. *Mann,* 65 W. V. 648, 64 S. E. 920; 131 Am. St. Rep. 987, 22 L. R. A. (N. S.) 1094.

What these exceptions are, have, so far as we can find, never been pointed out or defined, but in some states claims for funeral expenses or tomb stones and the like on account of their peculiar nature may be allowed against him in his representative capacity, but in other states even these are

denied and the personal representative is bound therefor personally.    Schouler, Executors and Administrators, Sec. 398.

The executor, unless authorized to do so by will, can not carry on or continue the business of the deceased.    Of course, those interested in the estate, such as creditors and distributees, may authorize him to do so.    ''The general rule is that a personal representative can not charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate; such contracts binding him only in his private capacity.''    *Thurmond* v. *Guyan Valley Coal Co.,* 85 W. Va. 501, 102 S. E. 221.

The note sued on does not come within any of the exceptions.    While it is shown by the affidavit of the cashier that the Bank expected the debt to be paid out of the assets of the estate, there is nothing to indicate that there was any agreement that the Bank would look only to the estate for payment.    There is nothing on the note indicating any such understanding and we do not think the estate is bound by the note, but it is the personal obligation of the defendant. This holding works no hardship on him, for he is in position, out of the assets in his hands or which will come into his hands, to reimburse himself.

Nor do we find, as contended by counsel for defendant, that defendant was not permitted to make defense, because the court merely corrected the judgment instead of setting it aside.    He could have made full defense had he desired; but he offered no defense further than was shown by his affidavits.    The matters shown therein were probably all the defense he had and they were fully considered.

We find no error, and therefore affirm the judment.

*Judgment affirmed.*