[No. 28378.   Department Two.   December 11, 1941.]

GRACE L. HARTER, *Respondent*, v. KING COUNTY, *Appellant*, THE STATE OF WASHINGTON *et al.*, *Defendants*.

JESSIE H. PRITCHARD, *Respondent*, v. KING COUNTY, *Appellant*, THE STATE OF WASHINGTON *et al.*, *Defendants*.[1]

[1]Reported in 119 P. (2d) 919.

584

*Smith, Matthews & Wilkerson,* for appellant.

*Case & Laube,* for respondents.

JEFFERS, J.—Grace L. Harter and Jessie H. Pritchard, each claiming to be the owner of property abutting on Cable street, in Central addition to East Seattle, King county, Washington, instituted separate actions in the superior court for King county, against King county, state of Washington, and the commissioner of state lands, to have that portion of Cable street abutting upon their property adjudged vacated and title quieted in the respective plaintiffs.

While we have before us only the pleadings in the Harter case, in view of the stipulation entered into between counsel for Grace L. Harter and Jessie H. Pritchard, and King county, that the two cases might be consolidated for the purpose of this appeal, we assume that the same general allegations were made and the same proceedings had in each case.

The complaint, after alleging plaintiff to be the owner of certain property in Central addition to East Seattle and all shore lands adjacent thereto, further alleged:

"III. That according to the plat of Central addition to East Seattle, dedicated August 4, 1890, and filed with the county auditor of King county August 6, 1890, and recorded in volume 7 of Plats, page 13, records of King county, Washington, and according to the Lake Washington shorelands survey prepared pursuant to the provisions of section 2, chapter 150, Session Laws of 1917, the south 8½ ft. of lot 12 and all of lots 13, 14, 15 and 16, block 1, and lots 1, 2, 3, 4 and 5, block 2, of the

said Central addition to East Seattle, and the shore-lands adjacent thereto, are adjoined and bordered on the south by Cable street, a street 75 feet in width, dedicated to the use of the public, running in an easterly and westerly direction from Navy Yard avenue on the east to the shoreline of Lake Washington on the west.

"IV. That chapter 19, Laws of 1890, of the state of Washington, section 32, page 603, provides as follows:

" 'Any county road, or part thereof, which has here-tofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be and the same is hereby vacated, and the authority for building the same barred by lapse of time.'

"That this statute remained in full force until amended and modified by chapter 90 of the Laws of 1909. That for the five years immediately following the effective date of this act and for many years there-after Cable street from Navy Yard avenue to Lake Washington was not in any way used or improved or open for public use even though authority was granted for the opening of the same by the dedication, filing and recording of the said plat of Central addition to East Seattle as above set forth. That, therefore, Cable street from Navy Yard avenue to the shoreline of Lake Washington became vacated by operation of law and title to the property covered by the north one-half of Cable street from the said Navy Yard avenue to the said shoreline of Lake Washington became the abso-lute property of the then owner of the property now owned by the plaintiff."

The complaint was verified on January 25, 1940, and filed in the clerk's office on March 15th following. On February 2, 1940, B. Gray Warner, prosecuting attorney for King county, filed an appearance for King county, notifying plaintiff that all further pleadings should be served upon him. On March 2, 1940, the prosecuting attorney filed and served, on behalf of King county, a demurrer to plaintiff's complaint on all the statutory grounds. On March 20th, the demurrer came on for

hearing before Honorable Calvin S. Hall, who, after hearing the arguments of counsel, entered an order overruling the demurrer. The record shows that no further pleading was filed by King county.

On April 23, 1940, the cause came on for hearing before Honorable Roger J. Meakim, apparently on the complaint of plaintiff, and, after testimony taken, the court, on the same date, made and entered findings of fact, conclusions of law, and decree in favor of plaintiff, and in accordance with the allegations of the complaint.

The following notation appears at the bottom of the findings and conclusions: "Approved: F. M. Reischling, Attorneys for defendant, King county." The same notation also appears at the bottom of the decree. While the findings, conclusions, and decree were approved by the attorney general, neither the state nor the commissioner of state lands appealed from the decree entered.

On May 20, 1940, King county, appearing by attorneys Smith, Matthews, and Wilkerson, filed a motion and petition to vacate the judgment entered on April 23, 1940. It is alleged in the petition that the court, on April 23, 1940, entered its judgment, quieting in plaintiff the title to the north half of Cable street, from the west boundary of Navy Yard avenue to the east boundary of Lake Washington shore lands, second class, on the west, same being in the Central addition to East Seattle, according to the plat of Central addition, filed August 4, 1890.

It is further alleged that the Harter action was commenced by filing with the clerk a complaint, and serving the same upon the auditor of King county; that the auditor failed to notify the board of county commissioners (who will hereafter be referred to as the board) of the commencement of the action, but

instead mailed the summons and complaint to the prosecuting attorney for King county, who also failed to call the attention of the board to the commencement of the action, or to notify it of the pendency of the action. It is further alleged that the board had no knowledge whatsoever of the action until after the decree had been entered; that the prosecuting attorney, without right and without authority, and without first consulting the board, stipulated with the attorneys for the plaintiff that a decree in favor of plaintiff and against the county might be entered, thus, without right or authority, stipulating away his client's right; that, had the board known of the pendency of such action, it would have insisted that an answer be filed and the case defended, as it was the opinion of the board that the county had acquired title to the land in question, and had a good defense or defenses to the action.

It is further alleged in paragraph VIII that the decree was irregularly and fraudently obtained by plaintiff, as the records show that no witness other than William T. Laube, Jr., was sworn or testified at the time the judgment was entered; that Laube was not born until 1912, and, because of that fact, could not possibly have had any knowledge or information concerning the facts alleged in the complaint, which all occurred between the years 1890 and 1895; that no facts were proved sufficient to warrant the granting of the relief given plaintiff. It is further alleged that King county has two valid defenses to the action, which purported defenses are then set out.

Plaintiff Grace L. Harter demurred to the motion and petition of King county, on the ground that the same did not allege facts sufficient to authorize the vacation of the judgment. On June 15, 1940, as appears from a minute entry, Judge Meakim overruled such demurrer.

On January 29, 1941, the motion and petition came on for hearing before Honorable Howard M. Findley. At the opening of this hearing, plaintiff Grace L. Harter again orally demurred to the motion and petition, on the ground hereinbefore stated, and the court, after hearing argument of counsel, on February 5, 1941, entered an order sustaining plaintiff's demurrer and dismissing the motion and petition to vacate. King county has appealed from the judgment entered.

Error is assigned upon the action of the trial court in sustaining the demurrer to the motion and petition, and in dismissing the motion and petition.

Appellant bases its principal contention for a reversal upon the proposition that the prosecuting attorney for King county, without the knowledge of the board, consented to the entry of a decree against the county and in favor of respondent, in the original proceedings to quiet title. Appellant further contends that the prosecuting attorney was without authority from the board, or under the statute, to permit entry of a consent decree against the county, and that the decree so entered is either void or voidable, and must be vacated.

In support of its position that a consent decree was entered, appellant places considerable reliance upon the fact that the findings of fact and conclusions of law, as well as the decree entered in the quiet title action, each bear the notation, "Approved: F. M. Reischling, Attorneys for defendant, King County." Mr. Reischling was an assistant prosecuting attorney. We are of the opinion that this notation, under the facts of this case at least, should not be construed as being other than the customary approval as to the form. *Bank of Gauley v. Osenton,* 92 W. Va. 1, 114 S. E. 435; *McMaster v. Radford,* 16 Ont. P. R. 20. While it may be that in practice the usual approval as to form is

expressed "approved as to form," yet we are not prepared to say that, by such an approval as appears in this case, the decree, because thereof, became a consent decree. We are of the opinion that such an approval is too frequent, and the consequences of holding that it becomes a consent decree too drastic in its effect upon the right of appeal, to countenance such a result.

Appellant also takes the position that the litigation was not contested, thereby further implying that the prosecuting attorney consented to the entry of judgment.

Judge Meakim made findings of fact, conclusions of law, and a decree based thereon, all of which are included in the transcript which is before us. As introductory to the findings and conclusions, we find the following recitation:

"This matter having come on regularly for hearing before the undersigned, one of the judges of the above entitled court, the plaintiff appearing by her attorneys, Case & Laube, the defendant, King County, appearing by its attorneys, B. Gray Warner and F. M. Reischling, and the defendants, State of Washington and the commissioner of state lands of the state of Washington, appearing by G. W. Hamilton, attorney general, and June Fowles, assistant attorney general; the testimony of witnesses having been heard, and the court having read the records and files herein and being fully advised in the premises now makes the following findings of fact:   .   .   ."

This recitation is repeated by Judge Meakim as introductory to the decree entered, with the addition of words referring to the findings of fact and conclusions of law previously entered.

The presumption is that such recitation states the truth. With this paragraph stating in effect that the court had made findings of fact upon the basis of testimony by witnesses and the records and files in the case,

and that the conclusions of law and the decree were entered in accordance therewith, we certainly are not at liberty to assume that the decree was rendered without proof offered and received, and that it was based merely upon the agreement of the parties. Not only is the decree silent as to such consent, it expressly negatives that it was based upon any consent agreement.

We think the very essence of a consent decree is that the parties thereto have entered voluntarily into a contract setting the dispute at rest, upon which contract the court has entered judgment conforming to the terms of the agreement, without putting the parties to the necessity of proof. We are of the opinion that the facts and decisions in the following cases bear out this general proposition: *Winton Motor Carriage Co. v. Blomberg*, 84 Wash. 451, 147 Pac. 21; *Continental Building & Loan Ass'n v. Woolf*, 12 Cal. App. 725, 108 Pac. 729; *Kumin v. United Waste Mfg. Co.*, 153 App. Div. 498, 138 N. Y. Supp. 82; *Mann v. Mann*, 176 N. C. 353, 97 S. E. 175; *Cobb v. Killingsworth*, 77 Okla. 186, 187 Pac. 477; *Manila Railroad Co. v. Arzadon*, 20 Philippine, 452. See, 8 Words and Phrases (Perm. ed.), Consent Decree, p. 631, and Consent Judgment, p. 634.

In the instant case, the court expressly purports to rest its decree upon the evidence in the case, not upon any consent of the parties, and the decree must be taken as evidencing the studied decision of the court, based on evidence rather than on an agreement of the parties.

The result might be different, of course, if there were any showing of fraud or collusion between the prosecuting attorney and the plaintiff, in procuring the decree. The only evidence to establish fraud or collusion, from which consent could be implied here, is the manner in which the prosecuting attorney de-

fended the action. It appears that the defense consisted principally of a demurrer interposed to the complaint, and argument thereon. After this demurrer had been overruled by Judge Hall, the prosecuting attorney did not file an answer to the complaint, but allowed the judgment to go against the county upon proof by plaintiff to sustain her cause of action, in the trial before Judge Meakim.

It may reasonably be contended that the prosecuting attorney did not employ a very vigorous defense, but we cannot, from this fact alone, imply fraud. Unquestionably some causes require and justify more painstaking and thorough defenses than others. The prosecuting attorney in control of the litigation is entitled to exercise his honest judgment as to how diligently to defend. If in the exercise of his honest and best judgment it should appear that the cause of action alleged and proved against the county is valid and indefensible, it certainly is not his duty to expend the public funds to make an extensive but futile defense. Where nothing to the contrary appears, it should be presumed that his failure to defend vigorously was motivated, not by fraudulent considerations, but by his honest judgment of the circumstances. When it appears, as in this case, that a plaintiff has proved his case to the satisfaction of the court, failure to contest every step of that proof does not constitute consent to the decree, nor does it constitute constructive fraud. We conclude that the decree entered was not a consent decree.

This conclusion renders it unnecessary to consider the arguments of counsel relative to the authority of the prosecuting attorney to enter into a consent decree against the county.

Appellant asks for a reversal for the further reason that the court, in the exercise of its sound discretion, should have granted appellant's motion and

petition to vacate. The only grounds urged by appellant in its brief as the basis for this contention are found in the following statutory provisions:

"The court may . . . relieve a party . . . from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." Rem. Rev. Stat., § 303 [P. C. § 8336], Laws of 1891, chapter 62, p. 106, § 3.

"Causes for vacation or modification of judgments. The superior court in which a judgment has been rendered, or by which, or the judge of which, a final order has been made, shall have power after the term [time] at which such judgment or order was made, to vacate or modify such judgment or order:

"3. For mistakes, neglect, or omission of the clerk, or irregularity in obtaining the judgment or order;

"4. For fraud practiced by the successful party in obtaining the judgment or order;

"7. For unavoidable casualty or misfortune preventing the party from prosecuting or defending." Rem. Rev. Stat., § 464 [P. C. § 8130], Laws of 1875, p. 20.

The only allegations in appellant's motion and petition to vacate, which could possibly sustain any relief under the above statutes, are the allegation to the effect that the board was not afforded the opportunity to introduce evidence in support of claimed valid defenses, because neither the county auditor nor the prosecuting attorney notified the board of the commencement of the action, it had no knowledge thereof, and, under the circumstances, because of the mass of business handled by the board, could not have been expected to have such knowledge; and the allegation that the decree was irregularly and fraudulently obtained, in that the records of the proceedings show that the proof of respondent's complaint was made entirely by the hearsay testimony of one witness, who testified as to events occuring in the years between 1890 and 1895, when this witness was not born until 1912.

The first question, then, is whether the allegations relative to notifying the board are sufficient to permit the trial court, in its discretion, to vacate the decree because taken against appellant through mistake, inadvertence, surprise, or excusable neglect, or for unavoidable casualty or misfortune preventing appellant from defending. The answer to this question necessarily turns upon the power and duties of the prosecuting attorney and the board. It is manifest that, if the prosecuting attorney acted pursuant to statutory authority to represent the county as a defendant in such proceeding, and if neither he nor the auditor is required by law to notify the board of the pendency of litigation, then, service upon the county having been properly made, and there being no fraud or collusion or other defect in the proceedings, the decree would be free from attack by way of motion or petition to vacate.

■ Rem. Rev. Stat., §§ 113, 116, and 4130 [P. C. §§ 1780, 1786, and 1788], set forth the powers and duties of a prosecuting attorney.

"§ 113. Prosecuting attorneys are attorneys authorized by law to appear for and represent the state and the counties thereof in actions and proceedings before the courts and judicial officers." (Laws of 1891, chapter 60, p. 95, § 3.)

"§ 116. The prosecuting attorney of each county shall have authority and it shall be his duty, subject to the supervisory control and direction of the attorney general, to appear for and represent the state and the county and all school districts in the county in which he is a prosecuting attorney, in all criminal and civil actions and proceedings in such county in which the state or such county or such school district is a party." (Laws of 1911, chapter 75, p. 375, § 1.)

"§ 4130. Each prosecuting attorney shall be the legal advisor of the board of county commissioners for the county for which he was elected; he shall also prosecute

all criminal and civil actions in which the state or his county may be a party, defend all suits brought against the state or his county, and prosecute all forfeited recognizances, bonds, and actions for the recovery of debts, fines, penalties, and forfeitures accruing to the state or his county: Provided, the commissioners of any county may employ other attorneys, when they may deem it for the interest of their county." (Laws of 1886, p. 61, § 5.)

By these express provisions, the prosecuting attorney is authorized, and it is made his duty, to appear for and represent his county in its defense of all suits and proceedings brought against it, with the provision that the board may employ other attorneys when it deems it for the best interest of the county.

Rem. Rev. Stat., § 4056 [P. C. § 1664], provides in part as follows:

"The several boards of county commissioners are authorized and required,—

"6. To have the care of the county property and the management of the county funds and business, and in the name of the county to prosecute and defend all actions for and against the county, and such other powers as are or may be conferred by law." (Laws of 1869, p. 305, § 11.)

Thus by statute, both the board and the prosecuting attorney are authorized and obligated to defend actions against the county. But we do not believe these statutes are contradictory or irreconcilable. We think their plain import is that the prosecuting attorney represents the county and the board in defense of the county, unless directed by the board to do otherwise, in which event the board may appoint another attorney to represent the county's interests. Where the board remains silent, it is bound by the bona fide representation of the county by the prosecuting attorney, who derives his primary authority, not from the board, but from the statutes.

Appellant cites *Prentice v. Franklin County,* 54 Wash. 587, 103 Pac. 831, and *State ex rel. Jefferson County v. Superior Court,* 142 Wash. 54, 252 Pac. 102, to sustain its contention that the prosecuting attorney was acting without authority when he assumed control of the suits in behalf of the county. These cases decide that the prosecuting attorney is without authority to conduct proceedings contrary to the manifested will of the board; they do not hold that his authority is lacking when the board has remained silent; nor do they give to the board any right to relitigate a matter once litigated in behalf of the county, by the prosecuting attorney acting within his statutory authority.

However expedient such notice might be, as a matter of business practice, in the handling of litigation against a county, so far as. we have been able to discover, no statute imposes any duty upon either the auditor or the prosecuting attorney to notify the board of the commencement of any proceedings against the county. It is not claimed there was any order of the board requiring that this be done, nor does it appear that there was any established custom or practice that this procedure be followed.

In this action, the summons and complaint were served upon the auditor of King county, who is the proper officer designated by statute to receive such service in behalf of the county. Rem. Rev. Stat., § 226 [P. C. § 8438]. No duty is imposed upon a plaintiff to also serve notice on the board.

While we do not find it necessary to so hold in this case, we suggest that it might logically be contended that, when service has been made upon the officer of the county designated by statute as the one upon whom service should be made, such service constitutes notice to the officials of the county whose duty it is to defend such actions, at least in the absence of any fraud or

collusion on the part of the auditor. It seems to us that, if this were not true, a litigant would always be at the mercy of county officials who might contend, for one reason or another, that they had not been apprised of the commencement of the action.

■ Whatever may be the character of judgments against a defendant, from which he is entitled to relief under § 303, *supra,* because taken against him through mistake, inadvertence, surprise, or excusable neglect, or under § 464, *supra,* because of unavoidable casualty or misfortune, which prevented him from defending, we are satisfied that the decree in question is not of that character. The proceeding was duly commenced by proper service. It was defended by a properly authorized county officer. Neither the respondent nor appellant failed to do all that the law requires to culminate the proceeding in a binding decree. Since it was not a prerequisite to that decree that the board either participate in the litigation, other than through the prosecuting attorney, or acquaint itself with the existence of the proceeding, we are satisfied that its lack of knowledge of this proceeding, if it could be said there was such, and the board's failure to participate therein, can, in our judgment, be no ground for vacation of the decree.

■ The second question raised by the allegations of the petition concerns the allegation that the decree was irregularly and fraudulently obtained. The allegation reads:

"VIII. That said judgment and decree were irregularly and fraudulently obtained by the plaintiff in that the records of the above entitled court show that no witness other than one William T. Laube, Jr. *were* sworn or testified at the time said judgment and decree was entered; that said William T. Laube, Jr. was not born until 1912, and because of that fact could not possibly have had any knowledge or information concerning the facts alleged in the plaintiff's complaint

which all occurred between the years 1890 and 1895; that the testimony could have, in fact, been nothing more than hearsay; that no facts were proved by the plaintiff sufficient to warrant the granting of the relief given the plaintiff in the decree and judgment entered herein on April 23, 1940."

This contention is without merit. It is not shown that any objection was made to the admission of this testimony. Hearsay evidence admitted without objection is competent evidence, to be considered for what it is worth, its probative value depending upon its character. *Atkins v. Clein*, 3 Wn. (2d) 168, 100 P. (2d) 1, 104 P. (2d) 489; note, 104 A. L. R. 1130. Furthermore, though this testimony is alleged to be hearsay evidence, it is not alleged to be inadmissible hearsay. Not all hearsay evidence is objectionable; it is entirely possible that the testimony of Mr. Laube, though hearsay, nevertheless comes within one or more of the well-recognized exceptions to the hearsay rule, and as such would have constituted competent evidence even on objection.

In its brief, appellant argues that the decree was also irregularly obtained, because it was approved for entry by the prosecuting attorney without filing an answer, without apprising the board of the pendency of the action, without the trial of any issue, and without complying with the required statutory procedure relating to confession of judgments. Appellant further argues that the decree was also fraudulently obtained because the prosecuting attorney's consent thereto constituted a fraud upon the public. While we think these questions have been answered in this opinion, as a matter of fact, the various arguments last referred to all present questions outside the issues raised by the pleadings where the sole ground upon which it is alleged the decree was irregularly and fraudulently en-

tered was that it had been rested upon the hearsay testimony of Mr. Laube.

Appellant alleges in its petition that it has two valid defenses to the original action. It is not necessary for us, nor was it necessary for the lower court, to pass upon the validity of these defenses. Rem. Rev. Stat., § 470 [P. C. § 8138], provides that: "The court may first try and decide upon the grounds to vacate or modify a judgment or order, before trying or deciding upon the validity of the defense or cause of action." We are of the opinion that appellant's petition has stated no cause for vacating the decree, and this being true, the validity or invalidity of appellant's defenses to the original action is not before the court.

In conclusion may we state that we do not wish to be understood as holding that the board is deprived of any authority, duty, or obligation cast upon it by the statutes or our former decisions, but we hold only that, under the facts of this case, no cause is shown sufficient to vacate the decree entered.

The order appealed from in each of the cases first hereinabove referred to must be and is hereby affirmed.

ROBINSON, C. J., BEALS, and SIMPSON, JJ., concur.
BLAKE, J., dissents.