[No. 30696. *En Banc.* December 28, 1949.]

ORNIE R. MUNDAY, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 213 P. (2d) 481.

*Walthew & Gershon,* for appellant.

*The Attorney General* and *Bernard A. Johnson, Assistant,* for respondent.

MALLERY, J.—This appeal is from a judgment dismissing claimant's action, entered on the department's motion for nonsuit challenging the sufficiency of claimant's evidence at the close of his case.

Appellant, a shipyard worker, was injured March 5, 1943, by a steel sliver which lodged under the nail of the middle finger of his right hand. Shipyard medical personnel treated the injury, but an infection occurred which made it necessary to remove the nail March 24, 1943. During this minor surgery, the yard surgeon administered several novocaine injections as a local anesthetic, and a few minutes thereafter appellant suffered sharp pains around his heart. The surgeon ordered his immediate removal to a hospital, where he was treated for a day or two. Five days after removal of the nail, appellant returned to the yard and, at his request, was given lighter work.

Prior to his injury and treatment, appellant did not suffer from heart trouble; subsequent to the injury and treatment, he did.

The department granted appellant's claim for time loss and treatment and closed his claim May 5, 1943. This award made no finding of disability of any kind. Symptoms of this alleged heart trouble became more debilitating subsequent to the closing of his claim, and on October 25, 1944, appellant petitioned to reopen on the grounds of aggravation, alleging that his heart trouble had been caused or aggravated by the finger injury and treatment therefor. The supervisor denied the petition. On the rehearing before the joint board, the supervisor was sustained. Appellant appealed to the superior court, with the result mentioned at the beginning of this opinion.

The department, in support of the judgment, contends that, without recourse to hearsay testimony, there is insufficient evidence of causal connection between the finger injury or the treatment thereof and appellant's condition as of October 25, 1944, to take the case to the jury.

This may be conceded. On the other hand, the evidence of the causal connection is sufficient to go to the jury if the hearsay evidence may be considered.

Appellant's testimony before the joint board included hearsay statements of the surgeon who removed his nail tending to establish that the novocaine injections had caused or aggravated the heart condition. Quoting the surgeon, he testified:

" . . . and told the nurse 'I don't know what the hell's the matter, I can't seem to get that numb. . . . I can't seem to get that numb enough to operate I will have to give him a extra shot.' I didn't know what he meant to do, so he blindfolded me down there and he laid my arm down and he would stick it again and I would move and he said 'What in hell is wrong I can't get this numb.' Every time he would stick it I could feel it and move the hand see, so he told the nurse there to fill up another something so the nurse got it ready there and he had me blindfolded and he stuck that in and pretty soon it shook me all over—and it shot pain all through me. Q. Where especially? A. All on this side, everything in me, I can't breathe hardly and he jerked off the blindfold and I was sweating. It weakened me right down and he hollered 'Get . ʌ . in order an ambulance right now'. Q. And what did Doctor Warren say when he administered this last shot which caused you to feel that way? A. He said when he ordered the nurse to call the ambulance and they couldn't get one 'I think I give the old man an overdose and it shook his heart up' something like that. So that from his language, I knew I was on the bum."

Appellant introduced four hearsay exhibits. Exhibit No. 1 purports to be a certificate dated October 27, 1944, stating that appellant was examined by the out-patient department of the King county hospital during 1942 and that he did not have heart trouble. It is signed by A. J. Hockett, M.D., Director of the King county hospital system. The

purpose of this exhibit was to *support* appellant's own testimony that he did not suffer from heart trouble prior to his injury and the treatment therefor.

Exhibit No. 2 is a note, dated July 23, 1943, given to appellant by Dr. F. R. Smith, the doctor who succeeded at the shipyard the surgeon who removed appellant's nail. This note was to be given to appellant's foreman and stated:

"This Saturday this man should be off work because of his heart—but if he stays on the job he should not work hard.                    [Signed]   F. Smith, M. D."

Exhibit No. 3 is a letter dated July 22, 1943, signed by Dr. Smith and addressed to the OPA, stating that appellant "has heart trouble" and must use a car to get to and from work, and requesting that he be given adequate gasoline for this purpose.

Exhibit No. 4 purports to be a letter requesting "Whom it may concern" to transfer appellant to light work. It was signed "M. Warren, M. D." and was probably written in May, 1943, although it cannot be deciphered with certainty.

The purpose of exhibits 2, 3 and 4 was to *support* testimony of appellant's medical expert that appellant had serious heart trouble in May and July, 1943. The testimony of appellant and his wife established (1) his freedom from heart trouble prior to the accident, (2) that the symptoms of heart disease commenced for the first time on the administration of the novocaine injections, and (3) that the condition became worse between the time his claim was closed, May 5, 1943, and October 25, 1944, when he petitioned to reopen for aggravation.

Dr. Feaman examined appellant on January 2, 1946, and made *objective* findings as of that date. Dr. Feaman's testimony as to the causal connection between the treatment for the injury and the subsequent aggravated heart condition therefore must have been based partly upon hearsay symptoms beyond his personal knowledge and partly upon his objective findings.

■ ■  Hearsay admitted without objections has probative value, depending upon its character. *Atkins v. Clein,*

3 Wn. (2d) 168, 100 P. (2d) 1, 104 P. (2d) 489, noted in 104 A. L. R. 1130, and the cases cited therein; *Harter v. King County*, 11 Wn. (2d) 583, 598, 119 P. (2d) 919; see, also, 12 Wash. L. Rev. 1, 4; 16 Wash. L. Rev. 253. It may not be wholly disregarded. Therefore the case should have been submitted to the jury, and it was reversible error to nonsuit appellant on that ground.

■■ The department further contends that the heart claim is an original claim barred by the one-year statute of limitations, Rem. Rev. Stat., § 7686 [P.P.C. § 706-1], notwithstanding it purports to be a claim for aggravation, which is under the five-year statute, Rem. Supp. 1947, § 7679 (h). Its argument is that the doctrine of *res judicata* applies not only to what was actually decided but also to what might have been or ought to have been decided, so that appellant's failure to claim disability for his heart condition prior to the closing of his finger claim, May 5, 1943, amounted to a determination that his heart condition could never be charged to the finger injury or the treatment therefor.

It also contends that a claim for aggravation contemplates a previous disability award, a prerequisite absent in this case.

The rulings in *Lindsey v. Department of Labor & Industries, ante* p. 370, 213 P. (2d) 316, passed squarely on these contentions adversely to the department. We adhere to those rulings.

The judgment is reversed, and the case is remanded for a new trial.

ALL CONCUR.