COASTAL TANK LINES, INC.

*v.*

J. M. HUTCHINSON AND CHEMICAL TANK LINES, INC.,

AND THE PUBLIC SERVICE COMMISSION OF WEST VIRGINIA

(No. 11070)

Submitted September 16, 1959. Decided November 3, 1959.

*Homer W. Hanna, Jr., Lively, Light & Francis, J. Henry Francis, Jr.,* for petitioners.

*Robert L. Stewart,* for Public Service Commission.

*Blagg, Stone, Mauzy, Anderson & Bowles, Charles E. Anderson,* for respondents.

*W. H. Belcher,* amicus curiae on behalf of the C. & O. Ry. Co., N.Y.C. System, N. & W. Ry. Co., and The Vgn. Ry. Co.

GIVEN, PRESIDENT:

This review involves the correctness of an order of the Public Service Commission of West Virginia, entered May 21, 1959. Coastal Tank Lines, Inc., as complainant, filed its petition before the Public Service Commission, alleging that defendants J. M. Hutchinson and Chemical Tank Lines, Inc., had violated the laws of West Virginia, in that, on January 12, 1959, without proper authority, they "transported by tank truck petroleum products in bulk from the plant of Gulf Oil Corporation", near Charleston, to Rainelle, and that such transportation was "a part of a plan of said Chemical Tank Lines, Inc., to attempt to activate a certificate once held by said J. M. Hutchinson, which had long since become void for failure to operate as well as by cancellation thereof according to the terms of same", praying that a "cease and desist" order be entered. Chemical Tank Lines, Inc., answered, denying the transportation by it, and alleging that its only interest in the matter was the existence of a contract with J. M. Hutchinson, whereby Hutchinson "has agreed to sell and transfer" to it the rights and authority under which the transportation mentioned was made.

J. M. Hutchinson answered, admitting the transportation as charged, and alleged that such transportation "was made in equipment operated by him, pursuant to authority issued by this Honorable Commission to J. M. Hutchinson on the 11th day of August, 1942, in M. C. Case No. 1588, wherein this Commission did issue to this defendant [J. M. Hutchinson] P.S.C. M.C. Certificate No. F-750-C". The Public Service Commission, after hearing, one member dissenting, on May 21, 1959, entered an order to the effect that Certificate No. F-750-C was null and void, and ordered that J. M. Hutchinson cease

and desist from any further operations thereunder. We granted J. M. Hutchinson a review of that order. The problem presently before this Court is to determine whether Certificate No. F-750-C is void as having expired by its own terms.

On April 10, 1941, P.S.C. M.C. Certificate No. F-750 was issued to J. M. Hutchinson, and on April 21, 1942, that certificate, in effect, was amended by the issuance to Hutchinson of Certificate No. F-750-B. We are not here concerned with the provisions of such two certificates. On May 18, 1942, Hutchinson filed his application for a further amendment of Certificate No. F-750, "to authorize operation as a common carrier by motor vehicle in the transportation of liquid petroleum products between points and places in * * * [certain counties] to points and places in West Virginia". After a hearing, on August 11, 1942, the Public Service Commission entered an order granting to Hutchinson "P.S.C. M.C. Certificate F-750-C, to operate as a common carrier by motor vehicle (tank trucks) in the transportation of liquid petroleum products in bulk * * * for distances not in excess of one hundred road miles * * *", subject to certain exceptions not here material. The certificate contained these pertinent provisions: "3. That said Certificate shall be effective until the prohibition imposed upon the protestant rail carriers by the Office of Defense Transportation is removed and until the authority herein granted is modified or canceled by an order of this Commission; 4. That upon the removal of the prohibition imposed by the Office of Defense Transportation, the protestants may request a reopening of this proceeding for the purpose of giving them an opportunity to show that the applicant's operation under the certificate issued herein enables him to unduly compete and interfere with their rights to transport said liquid petroleum products in bulk as common carriers by rail, and that the certificate issued to the applicant herein should be modified or canceled".

On October 22, 1942, J. M. Hutchinson filed an application praying for an "amendment to P.S.C. M.C. Certifi-

cate No. F-750-C to authorize the transportation of liquid petroleum products in tank trucks for distances not in excess of two hundred road miles between the points and places authorized in said certificate, in lieu of the present restriction to distances not in excess of one hundred road miles". After hearing on the last mentioned application, the Public Service Commission, on November 17, 1942, finding "that public convenience and necessity requires the service the applicant proposes to render during the time the said order of the Office of Defense Transportation is in effect; and that the applicant, subject to the limitation hereinafter imposed, is entitled to the authority for which he prays", ordered "that the applicant, J. M. Hutchinson, be, and he hereby is, permitted and authorized to operate as a common carrier by motor vehicle in the transportation of liquid petroleum products in bulk under said P.S.C. M.C. Certificate No. F-750-C for distances not in excess of 200 miles, including the transportation of liquid petroleum products in bulk from the refinery of the Virginia Oil and Gasoline Company at Sandyville, Jackson County, into Kanawha County, in accordance with his said application, upon the condition that the authority herein granted shall be effective until sixty days after the termination of the present war or until said order of the Office of Defense Transportation is canceled or modified".

On the hearing before the Public Service Commission, in the instant proceeding, transcripts of prior hearings were introduced for the purpose of showing that the intention of the commission, in the entry of the order of August 11, 1942 and the order of November 17, 1942, was to issue only temporary grants of authority to J. M. Hutchinson, and that the commission was warranted in considering facts disclosed by such transcripts for the purpose of resolving an ambiguity existing in or between those orders. As to those orders, no review was had, and the time for any review has long since expired. Code, 24-5-1. See *Atlantic Greyhound Corporation* v. *Public Service Commission,* 132 W. Va. 650, 54 S. E. 2d 169. The

question thus raised is severely limited, for this Court is of the opinion that no ambiguity exists as to the pertinent provisions of the order of August 11, 1942, or the order of November 17, 1942.

The pertinent language contained in the order of August 11, 1942, "That said certificate shall be effective until the prohibition imposed upon the protestant rail carriers * * * is removed and until the authority herein granted is modified or canceled by an order of this Commission", is clear and definite. No doubt or uncertain meaning can be ascribed to it. No word therein has any uncertain meaning as used in context. It clearly provides that the authority granted be effective until the prohibition imposed on the protestant rail carriers is removed or modified. It is argued that the order of November 17, 1942, actually "modifies" the prior order, but a modification of an order does not necessarily constitute a termination thereof. It, in truth, presupposes, usually, at least, the continuation of that which is changed or modified. That only such conclusion as to the meaning of the language could be justified is made clear, we think, by the language contained in the fourth paragraph of the order quoted above, that the "protestants may request a reopening of this proceeding for the purpose of giving them an opportunity to show that applicant's operation under the certificate issued herein enables him to unduly compete and interfere with their rights to transport said liquid petroleum products in bulk as common carriers by rail, and that the certificate issued to the applicant herein should be modified or canceled". Coastal Tank Lines, Inc., was not one of such "protestants", and no "request" for a "reopening of this proceeding" was ever made to the commission.

When we come to the order of November 17, 1942, we find the pertinent language used therein just as clear and definite. The language used, "the authority herein granted shall be effective until sixty days after the termination of the present war or until said order of the Office of Defense Transportation is canceled or modified",

is clear and precise. The authority "herein granted" can not be broadened to include authority previously granted, under a pretense of interpretation, for the plain reason that no ambiguity in the language exists. The only authority granted by the order related to the transportation of the named products the second one hundred road miles, that is, transportation for the distance of one hundred road miles above the authority previously granted and then held by the applicant. Nothing else was prayed in the application, or considered by the commission. It is argued that the authority to transport the additional one hundred road miles was "in lieu" of the provision of the order of August 11, 1942, but, even if so intended, it is definitely clear that only the additional authority, the authority to transport the second one hundred road miles, was to terminate on the happening of the events mentioned. We see no conflict, no ambiguity, in granting an "in lieu authority" to terminate upon the happening of an event. That, however, would not necessarily terminate prior rights and authority, especially where such prior rights and authority were not matters before the commission, on application or otherwise. See Point 3, Syllabus, *Black* v. *Crouch*, 85 W. Va. 22, 100 S. E. 749. We think it clear, therefore, that the only authority terminated by the happening of the events mentioned in the order of November 17, 1942, was the additional authority to transport the named products distances between one hundred and two hundred road miles.

It is vigorously contended that we should look behind the language of the orders, examine the transcripts of the prior hearings, and the applications filed in connection therewith, and determine that the intention of the commission was that all the authority granted by its two orders was to terminate upon the happening of such events. But such procedure is permissible only where an ambiguity exists in the language under consideration. Even where an ambiguity exists, the permissible procedure is sharply limited. We could, in that event, look behind the language only for the purpose of discovering

which of the meanings permissible under the ambiguous language was intended, not for the purpose of supplying or discovering an intention completely foreign to the language used. To hold otherwise would amount to a destruction of finality of judgments and decrees. See *Kane & Keyser Hardware Co.* v. *Cobb,* 79 W. Va. 587, 91 S. E. 454.

In 49 C.J.S., Judgments, Section 436, we find this statement: "The legal operation and effect of a judgment must be ascertained by a construction and interpretation of its terms, and this presents a question of law for the court. If the language used in a judgment is ambiguous there is room for construction, but if the language employed is plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used * * *". The principle has been consistently applied by this Court. See *English Moving and Storage Company* v. *Public Service Commission,* 143 W. Va. 146, 100 S. E. 2d 407; *Jones v. Kuhn,* 94 W. Va. 415, 120 S. E. 888; *Bank of Gauley* v. *Osenton,* 92 W. Va. 1, 114 S. E. 435; *Black* v. *Crouch, supra; Kane & Keyser Hardware Co.* v. *Cobb, supra; Laing* v. *Price,* 75 W. Va. 192, 83 S. E. 497.

In *English Moving and Storage Company* v. *Public Service Commission, supra,* the rule was applied to an order of the Public Service Commission. We there held: "1. When a valid written instrument is clear and unambiguous it will be given full force and effect according to its plain terms and provisions."

The order of the Public Service Commission entered May 21, 1959, is reversed and set aside, and this proceeding is remanded to the Public Service Commission of West Virginia.

*Reversed and remanded.*