## OTTAWA COUNTY CLERK v OTTAWA COUNTY BOARD OF COMMISSIONERS

Docket No. 77335. Argued January 14, 1987 (Calendar No. 12).
Decided June 22, 1987. Rehearing denied *post,* 1228.

In 1975, the Ottawa County Board of Commissioners approved a resolution creating the office of controller to act as the chief financial officer of the county. Thereafter, the controller assumed the accounts payable function of the county clerk, and certain personnel and materials pertaining to the function were transferred from the office of the clerk to that of the controller. The clerk subsequently brought an action in the Ottawa Circuit Court against the Ottawa County Board of Commissioners and the controller, seeking mandamus to require the return of all functions, duties, personnel, and supplies necessary to fulfill all the lawful duties of his office as well as adequate funding. The court, George R. Cook, J., denied mandamus. The Court of Appeals, HOOD, P.J., and MacKENZIE and DUNN, JJ., reversed in an opinion per curiam, holding that although under applicable statutes the clerk is entitled to perform the accounts payable function, he must do so within the parameters of the accounting system established by the controller (Docket No. 79708). The defendants appeal.

In a unanimous opinion by Justice LEVIN, the Supreme Court *held:*

It is within the statutory authority of a county board of commissioners to provide that accounts payable and check-writing functions be performed by the county controller.

1. Neither the county clerk nor a county controller are mandated under applicable statutes to receive and review bills and invoices from creditors of the county and process the accounts payable of the county, or to prepare checks in payment of accounts payable and payroll checks for county employees. Rather, it is the prerogative of the county board of commissioners to determine whether the function is to be

REFERENCES

Am Jur 2d, Municipal Corporations §§ 226, 235, 813.
See the annotations in the Index to Annotations under Clerk of Court; County Clerk.

performed by the clerk or the controller. The statutes prescribing the duties of the clerk and the controller do not specify to whom creditors should direct bills and invoices, how and by whom accounts payable should be processed, or how and by whom checks should be written in payment of board-approved accounts.

2. In this case, prior to 1975, the processing of accounts payable and the writing of checks was a function of the county clerk. The performance of those duties, however, was directed by the Board of Commissioners, not mandated by statute. The board's decision in 1975 that the controller should perform the accounts payable function was not inconsistent with the duties required to be performed by the clerk under applicable statutes. Likewise, if the board were to choose to continue to impose the performing of the accounts payable function on the clerk, it would not be inconsistent with the controller's statutory duty as chief accounting officer of the county. The controller could supervise the manner in which the clerk performed the function and require that the clerk do so in accordance with an accounting system established by the controller.

Reversed and remanded.

145 Mich App 502; 378 NW2d 527 (1985) reversed.

COUNTIES — COUNTY CLERKS — COUNTY CONTROLLERS — DUTIES.

It is within the statutory authority of a county board of commissioners to provide that accounts payable and check-writing functions be performed either by the county clerk or the county controller (MCL 45.402, 45.403, 46.4, 46.5, 46.11, 46.13b; MSA 5.912, 5.913, 5.324, 5.325, 5.331, 5.336).

*Cunningham, Mulder & Breese, P.C.* (by *Gordon H. Cunningham* and *Ronald J. Vander Veen*), for the plaintiff.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Jack R. Clary* and *Douglas W. VanEssen*) for the defendants.

Amici Curiae:

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Robert W. White* and *Douglas W. VanEssen*) for Calhoun County.

*Cohl, Salstrom, Stoker & Aseltyne* (by *Larry A. Salstrom*) for Ingham County.

*John C. Foster* for Macomb County.

*John P. Murphy* for Michigan County Clerk's Association.

*Stephen C. Corwin* for Muskegon County.

LEVIN, J. The questions presented are whether the statutes provide that the county clerk or that a county controller shall (1) receive and review bills and invoices from creditors of the county, and process accounts payable of the county, and (2) prepare checks in payment of accounts payable and payroll checks for county employees. We conclude that the statutes do not mandate either that the clerk or a controller shall do so, but rather that it is the prerogative of the county board of commissioners to determine whether the clerk or a controller shall do so. We hold that it was within the authority of the Ottawa County Board of Commissioners to provide that the accounts payable and check-writing functions shall be performed by its controller.

I

A statute has provided for over one hundred years that it is the duty of a county clerk "[t]o preserve and file all accounts acted upon by the board, and on no account to allow such accounts to be taken from his office."[1] The statute further provided that it is the duty of the clerk "[t]o

---

[1] 1881 PA 262, MCL 46.4; MSA 5.324. The quoted words were first enacted by 1851 PA 156, with the exception of the clause, added in 1881, prohibiting the removal of accounts from the clerk's office.

perform such other and further duties as such board may, by resolution, require."[2]

Another statute provided that the "books, records and accounts of the board" shall be deposited with the clerk and shall be open to examination by all persons, and that it is the duty of the clerk "to designate upon every account upon which any sum shall be audited and allowed by the board, the amount so audited and allowed, and the charges for which the same was allowed."[3]

Still another statute empowered the board "[t]o establish such rules and regulations in reference to the management of the interest and business concerns of such county" as the board shall deem necessary and proper in all matters not specially provided for by law. This statute also provided that the board shall not "audit or allow any bill, claim or charge" that had not been "filed with the county clerk" at least four days before a meeting of the board. The statute continued that the clerk "shall keep a book in which he shall enter all claims in the order in which they are presented, giving the name of the claimant, the amount of the claim, and the date when presented, which book shall, after the time prescribed for the presentation of claims, be placed in the hands of the chairman for the use of the board . . . ."[4]

In 1919, legislation was enacted authorizing the payment of salaries in lieu of fees to the sheriff, undersheriff, and deputy sheriffs "upon a warrant issued by the county clerk . . . ." The warrant cannot be issued until an itemized statement of all fees collected by the sheriff, undersheriff, and deputy sheriff, and paid over by them to the county

[2] *Id.*

[3] 1851 PA 156, MCL 46.5; MSA 5.325.

[4] 1877 PA 165, MCL 46.11; MSA 5.331. As first enacted, it was three days rather than four.

treasurer, is sworn to and filed with the county treasurer, and a duplicate filed with the county clerk.[5] At the next session of the Legislature, this legislation was extended to authorize the payment of salaries in lieu of fees as well to county clerks, county treasurers, and registers of deeds and their deputies so that their salaries also would be payable "upon a warrant issued by the county clerk" after an itemized statement of all fees collected and paid over to the county treasurer has been sworn to and so filed.[6]

In 1927, it was enacted that the board of a county having over 100,000 inhabitants may appoint a county controller who "shall be the chief accounting officer of the county and shall have charge and supervision of the accounts and accounting of every office, officer and department of the county . . . ." It is the duty of the controller "to see that a system of accounting is installed and properly kept by every office, officer and department of the county" in accordance with the provisions of law. In addition, the controller "may prescribe and direct the keeping of such other accounts and records and the making of such reports," in the controller's judgment, "necessary to properly record and report the financial transactions of the county." The controller is required "to keep in his office a general ledger in which shall be set up controlling accounts which shall show at all times the assets and liabilities of said county, and of each and every of its funds," and to "perform such other duties as the board" may impose.[7] In 1969, the population limitation was eliminated.[8]

[5] 1919 PA 237, MCL 45.402, 45.403; MSA 5.912, 5.913.

[6] 1921 PA 193, MCL 45.402, 45.403; MSA 5.912, 5.913.

[7] 1927 PA 257, MCL 46.13b; MSA 5.336.

[8] 1969 PA 49, MCL 46.13b; MSA 5.336. The number of inhabitants was reduced from 100,000 to 75,000 by 1929 PA 132.

II

In January, 1975, the Ottawa County Board of Commissioners approved a resolution creating the office of controller. Two employees from the clerk's office, who had been payroll agents, were transferred to the controller's office.[9]

Following the decision of the Court of Appeals in *Gogebic Co Clerk v Gogebic Co Bd of Comm'rs,* 102 Mich App 251; 301 NW2d 491 (1980), the Ottawa County Clerk asserted that the responsibility for preparing the "[c]lassification [l]edger," which he said "includes all bookkeeping functions performed in the county," and the "[p]ayroll and payroll records" and all "check writing" then being prepared by the controller should be performed in his office. The clerk commenced this action against the Ottawa County Board of Commissioners and the Ottawa County Controller, seeking a writ of mandamus requiring the return to his office of all functions, duties, personnel, and supplies neces-

[9] Presently, all claims against Ottawa County are filed with the controller, who enters them in the computer records from the source documents. Requests for payment come to the controller's office through a number of routes, including departmental requests for approval to make purchases. During entry in the computer, claims are audited by the controller's office, which produces an accounts payable check reconciliation report. This report, a summary of filed claims, is then delivered to the board's finance committee, which reviews the actual invoices. Upon committee approval, the report is delivered to the clerk's office at least four days before the board meeting. At the meeting, the board approves or disapproves claims on the list. After board action, the clerk records whatever action was taken on the claims so listed and permanently retains this report, and the controller notes the board's action on the computer record. The board does not receive any of the "source documents" that the clerk seeks in this action.

The clerk prepares payroll vouchers for the board members' salaries and delivers these to the controller. Payroll checks are prepared by an outside service bureau, and are checked against time sheets and are printed and screened for accuracy by the controller's office. This information is contained in a report filed with the clerk. The treasurer causes the treasurer's and clerk's signatures to be imprinted on the checks and returns them to the controller, who distributes them.

sary to fulfill all the lawful duties of his office, and requiring the board to provide adequate funding therefor.

The circuit judge concluded, on examination of *Gogebic,* that a writ of mandamus should be denied. He rejected the clerk's contention that he was entitled to possession of the "source documents," the original statements or bills received from creditors that are processed by the controller and recorded in the county computer for submission through the clerk to the board of commissioners for audit and allowance pursuant to the statute. The judge observed that the clerk had testified that he already had in his possession all the original books and records of the board of commissioners, including all the accounts and records contemplated by the statutes. He said that the computer, the silicone chip, and the computer print-out now substitute for rolls and books, that the clerk had two computer terminals in his office, and that the board and controller had offered him access codes to all county financial data and more terminals if he needed them.

The Court of Appeals reviewed its decision in *Gogebic* and declared that the Court there "concluded that the controller lacked the statutory basis to take possession and control of the board's books and accounts because such possession and control is placed by statute in the county clerk . . . ."[10] The Court said that the clerk contends "that he is more than a mere recordkeeper. He argues that he must also perform the accounts payable function."[11] The Court acknowledged that *Gogebic* "did not fully address the accounts pay-

[10] *Ottawa Co Clerk v Ottawa Co Bd of Comm'rs,* 145 Mich App 502, 509; 378 NW2d 527 (1985).

[11] *Id.,* pp 509-510.

able function,"[12] and declared that "[s]ince the clerk is, by statute, required to preserve and file all accounts acted upon by the board, and retain custody and control of the board's books, records, and accounts, we hold that the accounts payable function, by which board-approved claims against the county are paid, is properly performed only by the clerk."[13]

The Court said that its construction of the statutes was supported by the statutory language requiring that claims be filed with the county clerk at least four days before a board meeting, and in the language requiring the clerk to keep a book of all claims in the order in which they are presented. The Court read this as requiring that the clerk have possession of creditors' billings "whether by voucher or other 'original source document' . . . ."[14]

The Court acknowledged that the statutes were silent regarding who would "perform the payment of claims"[15] except, it said, the payment of the salaries of the county sheriff, undersheriff, county clerk, county treasurer, and register of deeds and their deputies. The Court declared it would "take the holding in *Gogebic* one step further and conclude that the clerk is statutorily required to issue the warrants for these officers, which in our view means to prepare, sign, and deliver them."[16] The Court held, however, that the clerk had not "established a clear legal right to issue the remainder of the checks or warrants . . . ."[17] The Court said that there is "no authority for the proposition that

[12] *Id.*, p 510.
[13] *Id.*, p 511.
[14] *Id.*
[15] *Id.*, p 512.
[16] *Id.*, pp 513-514.
[17] *Id.*, p 514.

[the clerk] must have control over the check protector"[18] and that it would assume that the clerk could "decline the use of his name on the county checks other than the payroll checks of these officers . . . ."[19]

Lastly, the Court said that while the clerk maintained a cost-classification ledger before 1975 which contained a record of the "daily transactions of the county under the proper budget line item,"[20] a cost-classification ledger was no longer maintained under the system of accounting prescribed by the controller. The statutes, said the Court, do not mandate the maintenance of a cost-classification ledger, and the clerk could not possess a ledger that was no longer being maintained under the system of accounting established by the controller. The Court concluded that "[a]lthough the clerk is entitled to perform the accounts payable function, he must do so within the parameters of the accounting system established by the controller."[21]

## III

It thus appears that the statutes prescribing the duties of the clerk and of the controller do not specify to whom creditors should direct their bills and invoices, or how and by whom accounts payable shall be processed and checks shall be written in payment of board-approved accounts.

The processing of accounts payable and the writing of checks[22] was, before 1975, a function of the Ottawa County Clerk. It does not follow, however,

---

[18] *Id.*, p 515.

[19] *Id.*

[20] *Id.*, p 514.

[21] *Id.*

[22] Including payroll checks.

that the statutes required the clerk to perform those functions. The statutes provide that the clerk—in addition to keeping a book in which shall be entered all claims in the order in which they are presented, preserving and filing all accounts acted upon by the board, designating on an account the amount audited and allowed and the charges for which the amount was allowed, and keeping all books, records, and accounts of the board—shall "perform such other and further duties as such board may" require.[23] In the absence of a statutory directive therefor, the clerk, before 1975, performed the "accounts payable function" and check-writing duties as duties imposed upon him by the board and not as duties imposed upon him by the statutes.

Although the clerk is obliged to keep a book of all claims in the order in which they are presented, to preserve and file all accounts acted upon by the board, to designate on the accounts audited and allowed by the board the charges and amounts allowed, and to keep all books, records, and accounts of the board, he need not receive, review, approve, or possess the bills or invoices sent by creditors in order to do so. The board does not see the bills or invoices. Instead, a computer print-out functions as the book of claims the clerk is required to prepare for public inspection at least four days before a board meeting and to present to the chairperson at the meeting.[24]

The duty to keep such a book of claims was

[23] See n 1 *supra*.

[24] The clerk presently receives an "accounts payable check reconciliation report" from the controller, the same form of claims documentation received by the board. The board does not receive the individual vouchers, requisitions, and purchase orders that the clerk seeks to obtain in this action. The statutes mandate only that the clerk keep a record of the claims to be presented to the board, without designating the particular form in which this record shall be maintained.

imposed as a part of a procedure that required the board, not the clerk, to audit and, if satisfied, to allow a bill, claim, or charge. The function of the four-day advance preparation requirement appears to be to provide public notice that the board will consider the claims listed in the book at a forthcoming meeting. The book of claims also provides the chairperson of the board with a complete list of all the claims to be considered at the meeting. The clerk can readily present such a list to the board without himself receiving, reviewing, approving, processing, or possessing the invoices or bills constituting the source documents of the accounts payable. Once the controller has processed and approved a creditor's invoice or bill for presentation through the clerk to the board, it is entered in the controller's books—today the computer—and the clerk can then readily prepare the book of claims—today a computer print-out—required by the statute to be prepared at least four days before the meeting of the board. The board's decision that the controller shall perform the accounts payable function is thus not inconsistent with the duties required to be performed by the clerk under the statutes.

The clerk's role under the statute is record keeping, ministerial and not discretionary. The designation on accounts of charges and amounts audited and allowed is a part of the clerk's duties as the keeper of the books, records, and accounts acted upon by the board. The duty to record what the board has done with respect to a claim does not imply a duty to review the creditor's billing and to process the claim before the board acts.

The clerk's argument that this Court should read the statutes to require the clerk to perform the accounts payable function so as to provide a check and balance in order to limit the concentra-

tion of power ignores that the statutes empower the board and not the clerk to audit and allow a claim.

Nor do we find merit in the board's argument that it would be inconsistent with the controller's statutory duty as chief accounting officer of the county for the clerk to perform the accounts payable function. If a board were to choose to continue to impose the duty of performing the accounts payable function on the clerk, the controller could nevertheless supervise the manner in which the clerk performs such function and require, as provided in the statute, that he do so in accordance with the accounting system established by the controller. That this might involve duplication of effort does not gainsay the board's authority under the statutes to decide whether the clerk or the controller shall perform the accounts payable function.

While the board could continue to empower the clerk with the authority and responsibility of performing the accounts payable function, under the 1927 legislation, authorizing the board to appoint a county controller, such authority and responsibility may, in the board's discretion, be conferred by the board on the controller pursuant to the provision of that legislation stating that the controller "shall perform such other duties as the board may"[25] impose.

In sum, it is for the board to decide whether the clerk or controller shall perform the accounts payable function. The board's decision to impose that function on a controller does not impinge on the clerk's duties to keep a book of claims to be presented to the board of commissioners for audit and allowance, to preserve and file all accounts

---

[25] See n 7 *supra*.

acted upon by the board, to designate on the accounts audited and allowed by the board the charges and amounts allowed, and to keep the books, records, and accounts of the board.

IV

The statutes do not provide, as the Court of Appeals observed, that the clerk shall prepare the payroll or other checks. While it is provided that the sheriff, undersheriff, county clerk, county treasurer, and register of deeds and their deputies shall be paid their salaries "upon a warrant issued by the county clerk," this does not require or empower the clerk to prepare a check or other negotiable instrument. A warrant is a nonnegotiable order or authorization to pay money; a check is a negotiable order or authorization to pay money.[26] The clerk is thus only required and empowered, by the statute providing for the issuance by the clerk of a warrant, to prepare a nonnegotiable order or authorization and not a check.

The purpose and function of this warrant is to certify that the requisite fee statements have been filed with respect to the salaries of the officers for which a clerk's warrant is required, and to authorize payment by the treasurer of their salaries. This warrant does not function as or in lieu of a check drawn by the treasurer. The statutes do not contemplate that funds may be withdrawn from the county treasury without the signature of the treasurer on the warrant of the clerk. We conclude that the board may in its discretion also impose on the controller the duty of preparing all payroll checks for signature by the treasurer.

[26] See 93 CJS, Warrant, p 555; 10 CJS, Bills and Notes, p 429; *Russell Co Bd of Ed v Taxpayers & Citizens of Russell Co,* 163 So 2d 629, 633 (Ala, 1964); *East Lansing State Bank v Keil,* 213 Mich 17; 180 NW 347 (1920).

In Ottawa County, the clerk's signature presently appears on all checks issued by the treasurer, evidencing an order or authorization by the clerk for payment to the officers in respect to whose salaries his warrant is required. This signature satisfies the statutory warrant requirement.

Reversed and remanded to the circuit court for reinstatement of the judgment entered by that court.

Riley, C.J., and Brickley, Cavanagh, Boyle, Archer, and Griffin, JJ., concurred with Levin, J.