GOGEBIC COUNTY CLERK v GOGEBIC COUNTY BOARD OF
COMMISSIONERS

Docket No. 47673. Submitted October 7, 1980, at Grand Rapids.—
Decided December 3, 1980.

The Gogebic County Board of Commissioners, through its commit-
tees, established the position of Gogebic County Controller. The
appointed controller subsequently informed county department
heads that all pay checks would be issued by his office. Previ-
ously, the pay checks had been delivered to the various depart-
ments by the county clerk. Thereafter, without the approval of
the county clerk or a court order, certain functions and duties
maintained by the county clerk were transferred to the county
controller, including general fund cost classification records,
payroll records, files of paid vouchers, blank checks and other
various books, records, and accounts. The controller received
approval from the board of commissioners to hire a bookkeeper.
The county clerk has no knowledge concerning the bookkeeping
or accounting systems used internally by the controller's office.

Melvin R. Peterson, the Gogebic County Clerk, filed a com-
plaint in Gogebic Circuit Court, seeking a writ of mandamus to
compel the Gogebic County Board of Commissioners and the
Gogebic County Controller to transfer and return to the county
clerk all books, records and accounts taken from the clerk's
office by the controller. Philip J. Glennie, J., granted the writ of
mandamus and ordered the defendants to transfer and return
to the county clerk all books, records and accounts taken from

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur 2d, Mandamus §§ 12 et seq., 424.
[2] 52 Am Jur 2d, Mandamus § 4.
[3, 4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 177 et seq., 342.
[5, 7, 8, 9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 235 et seq., 283.
[6] 73 Am Jur 2d, Statutes §§ 272, 275.
[9] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 585.
[10] 73 Am Jur 2d, Statutes § 396.
[11] 63 am Jur 2d, Prosecuting Attorneys § 22 et seq.

the clerk's office by the controller and to return to the clerk all duties required of him by law and to provide sufficient funding for equipment, supplies, and staff. In addition, Judge Glennie ordered that a special prosecuting attorney be appointed to represent the clerk retroactive to the date the suit was filed. The defendants appeal, alleging improper issuance of an order to show cause, improper issuance of the writ of mandamus, errors in the ruling that the controller was not authorized to sign payroll checks and that the controller could not have possession of the board's books and accounts, and error in the appointment of a special prosecuting attorney. *Held:*

1. The plaintiff's motion for an order to show cause was contained in its complaint and the allegations, if true, were ongoing and sufficient to establish the necessity for immediate action. Under such circumstances, the order to show cause was properly issued.

2. There is no statutory basis on which the controller could take possession and control of the board's books and accounts; such possession and control is by statute placed in the county clerk. The board of commissioners and the controller have a clear legal duty to leave unchanged the clerk's clear legal right to such possession and control. The writ of mandamus was properly issued, there being no question that the return of the books and accounts required no exercise of discretion on the part of either defendant.

3. The controller was not authorized to sign payroll checks. The county clerk is given authority to sign the warrants for the payroll of certain county officers. Because the controller was not properly hired, he had no authority to sign any other payroll checks.

4. The Michigan statutory provisions regarding the powers and duties of the county clerks as to the books and accounts of the boards of supervisors do not violate the title-object clause of the Michigan Constitution of 1963 because the two provisions are germane, auxiliary to or incidental to the general purpose of the act. Neither are they repealed by implication or otherwise.

5. Because the county prosecutor had elected to represent the board of commissioners and the controller in their defense to the suit and the plaintiff had no official representation, the trial court did not err in appointing a special prosecutor to represent the plaintiff.

Affirmed.

1. MANDAMUS — CIRCUIT COURT JURISDICTION — COUNTY OFFICERS —
   COURT RULES — EX PARTE ORDERS.

   The circuit courts have jurisdiction in all mandamus proceedings
   involving the action or non-action of any officer or board of any
   county, and in such cases the plaintiff may file an ex parte
   motion for an order to show cause (GCR 1963, 714.1[2]).

2. MANDAMUS — REQUIREMENTS FOR WRIT.

   Mandamus lies only where there is a clear legal duty incumbent
   on the defendant and a clear legal right in the plaintiff to the
   discharge of such duty, and the specific act sought to be
   compelled must be of a ministerial nature, that is, prescribed
   and defined by law with such precision and certainty as to
   leave nothing to the exercise of discretion or judgment.

3. COUNTIES — COUNTY CLERKS — BOARDS OF COMMISSIONERS —
   STATUTES.

   The county clerk is designated as the clerk for the board of
   commissioners and, in such position, the clerk is responsible for
   preserving and filing all accounts acted upon by the board, and
   in no account shall he allow such accounts to be taken from his
   office (MCL 46.4; MSA 5.324).

4. COUNTIES — BOARDS OF COMMISSIONERS — COUNTY CLERKS —
   BOOKS, RECORDS, AND ACCOUNTS — STATUTES.

   The books, records and accounts of the county board of commis-
   sioners shall be deposited with their clerk; while such docu-
   ments are to be made available to the public under the Michi-
   gan Freedom of Information Act, no one may remove them
   from the clerk's office and refuse to return them, and the officer
   in custody shall not permit their removal except by court order,
   subpoena duces tecum, or for purposes of an audit (MCL 15.231
   *et seq.,* 46.5, 750.491; MSA 4.1801[1] *et seq.,* 5.325, 28.759).

5. COUNTIES — COUNTY CONTROLLERS — POWERS AND DUTIES —
   STATUTES.

   A county is empowered, through its board of commissioners, to
   appoint a county controller, and the controller shall be the
   chief accounting officer of the county and shall have charge and
   supervision of the accounts and accounting of every office,
   officer and department of the county, the whole or any part of
   the expense of which are borne by the county; the controller
   shall keep in his office a general ledger in which shall be set up
   controlling accounts which shall show at all times the assets
   and liabilities of the county, and each and every of its funds
   (MCL 46.13b; MSA 5.336).

6. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

Statutory interpretation is primarily concerned with ascertaining the intent of the Legislature, and when construing a statute, effect should be given to every part thereof insofar as is possible.

7. COUNTIES — COUNTY CLERKS — BOOKS, RECORDS, AND ACCOUNTS — COUNTY CONTROLLERS.

A county board of commissioners may appoint a county controller who will oversee all of the books and accounts for every county office or department notwithstanding the county clerk's exclusive possession and control of the board's books and accounts or any other officer's or department's possession and control of the books and accounts which relate thereto; the controller is to see that a system of accounting is implemented by every office, officer or department.

8. COUNTIES — COUNTY CONTROLLERS.

The county controller is to keep a general ledger in his office in which are set up controlling accounts which always reflect the financial status of the county; he is to examine the books and accounts of the several offices, officers and departments and report his findings to the board of commissioners.

9. COUNTIES — PAYROLL — COUNTY CLERKS — COUNTY CONTROLLERS — STATUTES.

Pursuant to statute, the county clerk shall sign the warrants for the payroll of the sheriff, under-sheriff, deputy sheriffs, county clerk, county treasurer, register of deeds, and the deputies of such officers; the county controller has no authority to sign the checks for these officers (MCL 45.403; MSA 5.913).

10. STATUTES — REPEAL BY IMPLICATION — CONSTRUCTION.

Repeal of a statute by implication is not favored nor presumed.

11. PROSECUTING ATTORNEYS — REPRESENTATION OF COUNTY OFFICIALS — STATUTES.

A circuit court is empowered to appoint a special prosecutor to represent a county official in a dispute between county officials where the county prosecuting attorney elects to represent the other county official since a Michigan statute provides that the prosecutor shall prosecute or defend all civil suits in which the county may be interested (MCL 49.153; MSA 5.751).

*Humphrey & Murphy,* for plaintiff.

*Anders B. Tingstad, Jr.,* Prosecuting Attorney, for defendant.

Before: J. H. GILLIS, P.J., and BASHARA and CYNAR, JJ.

- J. H. GILLIS, P.J. Defendants appeal as of right the Gogebic County Circuit Court's September 5, 1979, order granting a writ of mandamus. The writ ordered defendants to transfer and return to the Gogebic County Clerk all books, records and accounts taken from the clerk's office by defendant controller. Defendant board of commissioners was also ordered to return to the clerk all duties[1] required of him by law, and provide sufficient funding for equipment, supplies, and staff. Defendants also appeal the circuit court's September 7, 1979, order appointing a special prosecuting attorney to represent plaintiff, retroactive to the date the suit was filed.

The findings of fact as stated by the circuit court are adopted in pertinent part as follows:

"Plaintiff Melvin R. Peterson is the County Clerk of Gogebic County, a constitutionally created office, and as clerk he is vested with certain powers, duties, and responsibilities as prescribed by various statutes enacted by the Michigan Legislature.

"Defendant Board of Commissioners is the supervisory board of Gogebic County with duties and powers defined by the Michigan Constitution 1963, Article 7, and by the provisions of Michigan Statutes, particularly Public Act 1851, No. 156, as amended. (MSA 5.321 *et seq.)*

"Defendant Rick Minkin is employed as County Controller, whose powers and duties are defined by the

[1] The circuit court's order stated in part: "That defendant, Gogebic County Board of Commissioners reinstitute the functions and duties of the Gogebic County Clerk as required by law and by the opinion of this Court with respect to the above mentioned items."

provisions of MCL 46.13(b), as amended, MSA 5.336(13b) *[sic]*.

"Plaintif's predecessor in office as Gogebic County Clerk was George P. Hakala, and Charles Londo preceded Rick Minkin was County Controller.

"The records and proceedings of the Board of Commissioners show that Richard A. Sofio, vice chairman and member of the Court House Jail and Grounds Committee, proposed establishing [the] office [of controller]. The resolution * * * contained a description of the duties of such controller, and it was approved by such committee. Thereafter, on April 24, 1974, the Finance and Budget Committee approved that the County Board advertise for applications to this position. * * * on July 30, 1974, at a meeting of the Finance and Budget Committee, Charles A. Londo was employed [as controller]. * * *

"Apparently the only official action by the full Board in the creation of the office and selection of the controller concerned the authorization of an annual salary * * * for the controller.

"The minutes of the Board of Commissioners do not show any authorization given or approval made as to the actions of the Court House Jail and Grounds Committee or the Finance and Budget Committee. Hence all actions involving the creation of the office of controller were taken by sub-committees, and the full board has never approved such actions.

* * *

"The County Finance Budget and Auditing Committee acts only in an advisory capacity similar to other committees of the board. * * *

"Plaintiff's predecessor, George P. Hakala, by oral and written communication objected to the creation of the position of county controller, as well as the removal of books, records, and accounts from his office.

"Controller Charles Londo wrote all department heads: 'Effective Monday, September 30, 1974, all pay checks will be issued by this office. This is a change from the past procedure whereby the pay checks have been delivered to the departments by the county clerk.

No exceptions will be made to this policy, except for extenuating circumstances.'

"Charles Londo, by letter dated April 17, 1975, directed to Richard Sofio, chairman of the Gogebic County Board of Commissioners, requested that certain functions and duties maintained by the county clerk be transferred to his office. These included general fund cost classification records, payroll records, files of paid vouchers, [and] supply of blank checks, and further requested such transfer be completed by May 1, 1975.

"The testimony further indicates the position of bookkeeper was transferred from the county clerk's office to the controller's office, along with the transfer of various books, records, and accounts from the clerk's office. The removal of such materials was done without the approval of the county clerk or a court order.

"The controller petitioned the full board for a bookkeeper and advised the board of his accounting system. The controller received approval April 23, 1975.

"The controller and his office employees are not appointed as deputy county clerks.

"Plaintiff has demanded the return of such records, and the controller and members of the board of commissioners have refused such demand.

"The payroll warrants and payroll checks of county officers and deputies were issued upon warrants and payroll checks signed only by the controller during the period of employment of Controller Londo, and during a portion of the employment of Controller Minkin, and such warrants and payroll checks are presently signed by Controller Minkin and the Gogebic County Treasurer.

"No resolutions have been passed by the Defendant Board of Commissioners authorizing the signing of a bank signature card or other device permitting the controller to sign warrants or checks. Lacking such authorization the controller has executed a bank signature card authorizing him to sign checks drawn on Gogebic County.

"The method of accounting by the controller provides that the claims and accounts shall be maintained in a series of books. Claims are forwarded directly to the

controller's office by claimants. These claims are placed in a clipboard in chronological order of receipt and entered in the claims and accounts ledger. The clipboard and ledger are submitted to the Finance and Budget Committee meetings. A member of the committee initials the original claims and another member checks each claim that is allowed in the claims and accounts ledger. Approval or disapproval is also noted in the ledger.

"Thereafter, the claims and accounts ledger and the list of claims and accounts * * * are forwarded to the clerk's office. This is done at a period which exceeds the present four-day requirement under Act 629 of 1978. The clerk then prepares the agenda for the full county board meeting, which is based upon the claims and accounts ledger, and lists them as received by him from the committee. The agenda is then supplied to the board members prior to the meeting.

"After the books are returned to the controller prior to the board meeting, the controller prepares the warrant for the board's signature, along with the cash control forms. The warrants are then furnished to the clerk and to the treasurer for their signatures and returned to the controller's office. At the regular board meeting the board will approve or disapprove the claims and accounts as recommended by the committee, and the proper signed claims and accounts are then sent out by the controller.

"This accounting procedure by the controller's office discloses that the county clerk does not sign the claims and accounts records of the board of commissioners, and that the bills, claims, and charges against the county are filed with the controller's office and not with the county clerk prior to their being audited and approved by the county board. The county clerk has no knowledge concerning the bookkeeping or accounting systems used internally by the controller's office.

"The commissioners hold their position on a part time basis, and it further appears that none of the commissioners is a professional accountant or versed in accounting procedures.

"The general ledger is kept and maintained in and by the county treasurer's office, and not by the controller.

"The county clerk's office has a system of accounts and accounting relating to its own daily operating procedures which involves a book of receipts and expenditures, a book containing listings of receipts and expenditures, a record of transmittal of funds received by the clerk's office to the county treasurer, including a bank deposit ticket, a record of transmittal and receipt of transmittal from the treasurer's office. This system constitutes the accounts and accounting of the county clerk's office.

"The record shows the controller has never audited the accounts and accounting of the county clerk's office, nor have other departmental offices been so audited since this office was created. It therefore appears the county controller has not developed a system of checks and balances with respect to control of public moneys and finances. The state, however, does audit the county periodically.

"The controller does not have possession nor control of books of account of the Probate and District Courts."

Defendants' claims are several:

(1) Improper rendition of an order to show cause why a writ of mandamus should not issue;

(2) Improper issuance of the writ of mandamus;

(3) Error in the ruling that the controller was not authorized to sign payroll checks;

(4) Error in the ruling that the controller could not have possession of the board's books and accounts; and

(5) Error in the appointment of a special prosecuting attorney.

I

Defendants first claim that an order to show cause why writ of mandamus should not issue was improperly granted under GCR 1963, 714.2, be-

cause the complaint did not disclose a need for immediate action and because, as a result, all of the usual pretrial procedures were circumvented to the disadvantage of the trial and appellate courts.

Under GCR 1963, 714.1(2), the "circuit courts have jurisdiction in all mandamus proceedings involving the action or non-action of any officer or board of any county". In such cases, the plaintiff may file an ex parte motion for an order to show cause. If it is established that immediate action is necessary, the order shall issue. GCR 1963, 714.2(1). The facts on which the court shall determine the existence of a necessity for immediate action are those stated in the ex parte motion.

In this case, plaintiff's motion for an order to show cause was contained in its complaint. See, GCR 1963, 714.2(1). The facts pleaded in the complaint alleged that defendants were in possible violation of several criminal statutes, that there had been an attempt at unlawful tampering with the books, and that there had been a breakdown in the general checks and balances of the county government. If true, these actions were ongoing and, consequently, were sufficient to establish the necessity for immediate action. Under such circumstances, the order to show cause was properly issued.

## II

Defendants' claim that the writ of mandamus should not have issued was grounded on the argument that defendants were not obligated to do the act on which the writ was based and that the act sought to be enforced was discretionary rather than ministerial in nature. Defendants further state that the improper grant of the writ is re-

flected in the fact that the trial judge had to resolve a conflict between MCL 46.4 and 46.5; MSA 5.324 and 5.325, the statutes setting forth the county clerk's duty to supervise certain books, records and accounts, and MCL 46.13b; MSA 5.336, the statute which empowers the county controller to act as chief accounting officer of the county, with supervision of the accounts and accounting of every office in the county.

"Mandamus lies only when there is a clear legal duty incumbent on the defendant and a clear legal right in the plaintiff to the discharge of such duty. *Miller v Detroit,* 250 Mich 633; 230 NW 936 (1930). The specific act sought to be compelled must be of a ministerial nature, that is, prescribed and defined by law with such precision and certainty as to leave nothing to the exercise of discretion or judgment. *Taylor v Ottawa Circuit Judge,* 343 Mich 440; 72 NW2d 146 (1955), *Bills v Grand Blanc Twp,* 59 Mich App 619; 229 NW2d 871 (1975), *State Board of Education v Garden City School District,* 62 Mich App 376; 233 NW2d 547 (1975)." *Board of County Road Comm'rs of Oakland County v State Highway Comm,* 79 Mich App 505, 509; 261 NW2d 329 (1977), *lv den* 402 Mich 907 (1978).

As applied in this case, the clear legal right in the plaintiff, which the lower court found, was the right to have possession and control of the books and accounts of the board of commissioners. The clear legal duty in the defendants, as found by the lower court, was the duty to leave the books and accounts in the county clerk's possession and control. The fact that the lower court had to construe the interrelationship between the county clerk's statutes and the controller's statute does not, in and of itself, mandate a finding that neither the right nor the duty are clear.

Under MCL 46.4; MSA 5.324, the county clerk is

designated as the clerk for the board of commissioners. This statute also states that, in such position, the clerk is responsible for, among other things, preserving and filing "all accounts acted upon by the board, and in no account [shall he] allow such accounts to be taken from his office". MCL 46.5; MSA 5.325, further provides that "the books, records and accounts of the county board of commissioners shall be deposited with their clerk". While such documents are to be made available to the public under the Michigan Freedom of Information Act, 1976 PA 442; MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.,* no one may remove them from the clerk's office and refuse to return them, MCL 750.491; MSA 28.759, and the officer in custody shall not permit their removal except by court order, subpoena duces tecum, or for purposes of an audit. MCL 750.492; MSA 28.760. It is thus clear that, standing alone, these statutes, singly or together, were violated when the Gogebic County Controller secured possession and control over the books and accounts of the board and refused to return them to the county clerk.

Under MCL 46.13b; MSA 5.336, a county such as Gogebic is empowered, through its board of commissioners, to appoint a county controller. Further:

*"The controller shall be the chief accounting officer of the county and shall have charge and supervision of the accounts and accounting of every office, officer and department of the county, the whole or any part of the expense of which are borne by the county.* The controller shall see that a system of accounting is installed and properly kept by every office, officer and department of the county in strict accord with the provisions of law, and in addition to which he may prescribe and direct the keeping of such other accounts and records and the making of such reports as in his judgment are

necessary to properly record and report the financial transactions of the county. All county officers or employees shall furnish such information respecting all county matters in their charge as the controller shall require. *The controller shall keep in his office a general ledger in which shall be set up controlling accounts which shall show at all times the assets and liabilities of the county, and of each and every of its funds.* The controller shall examine regularly the books and accounts of the several officers, agents and departments of the county and report his findings to the board of supervisors at such times as they shall prescribe." (Emphasis supplied.)

The language of this statute, on its face, does not conflict with the provisions of §§ 4 and 5 noted above. Rather, it suggests that the controller should oversee (supervise) the books and accounts of *all* county offices and departments. It says nothing about *possession* of such accounts; such an arrangement would complicate rather than streamline county finances. And yet, if the controller were intended to have custody and control over the board's books and accounts, the statute should so state, since such would clearly contradict the clerk's statutes. Further, if possession and control of the board's accounts was found to be mandated by the above statute, the controller would likewise have to assume possession and control over all county books and accounts; clearly, the statute does not distinguish between the accounts of one office or department and those of another.

While the statute setting forth the county clerk's duties as clerk of the board has been in force since the 1850's, the controller's statute was not enacted until 1927. See, 1927 PA 257. As first enacted, § 13b was not significantly different from the current version. The only substantive amendments which were made through the years in-

volved the qualifying characteristics of the counties whose boards may appoint a controller (1927 PA 257; 1929 PA 132; and 1969 PA 49), and the power to also appoint a board of auditors instead of a controller. 1969 PA 49.

Statutory interpretation is primarily concerned with ascertaining the intent of the Legislature. *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). When construing a statute, effect should be given to every part thereof, insofar as is possible. *Id.* If these rules are applied to the statutes on which the instant parties make their cases, it is seen that neither irreconcilably conflicts with the other. Rather, we interpret the statutes to provide that, notwithstanding the county clerk's exclusive possession and control of the board's books and accounts, or any other officer's or department's possession and control of the books and accounts which relate thereto, a county board of commissioners may appoint a county controller who will oversee all of the books and accounts for every county office or department. In this regard, the controller is to see that a system of accounting is implemented "by every office, officer or department". He is to keep a *general* ledger in his office in which are set up controlling accounts which always reflect the financial status of the county. Finally, he is to *examine* the books and accounts of "the several offices, officers and departments and report his findings to the board".

The scheme provided by the interrelationship of §§ 4 and 5 and § 13b may be envisioned as a network which is wheel-shaped. The controller is the hub; the several offices, officers and departments which by their nature require the keeping of individual books and accounts are the spokes.

Each spoke has day-to-day responsibility for its books and accounts, albeit under a system of accounting imposed by the controller. The financial data gathered in each of the books and accounts is funneled to the board through the controller, whose general ledger will then reflect an up-to-date overall view of the county's finances. In this manner, a person or entity interested in a financial picture of the county need only go to the controller's general ledger rather than to each of the books and accounts *seriatim.*

We hold that there is no statutory basis on which the controller could take possession and control of the board's books and accounts. We have acknowledged that such possession and control is by statute placed in the county clerk. The conclusion is thus inescapable that the board and the controller have (had) a clear legal duty to leave unchanged the clerk's clear legal right to such possession and control. Thus, the writ of mandamus was properly issued, there being no question that the return of the books and accounts required no exercise of discretion on the part of either defendant.

## III

Defendants further claim that the finding of the trial court that the controller was not authorized to sign payroll checks was erroneous. We disagree.

MCL 45.403; MSA 5.913, states that the county clerk shall sign the warrants for the payroll of certain officers (sheriff, under-sheriff, deputy sheriffs, county clerk, county treasurer, register of deeds, and the deputies of such officers). The controller thus had no authority to sign the checks for these officers.

Moreover, we agree with the trial court's finding that, because the controller was not properly hired, he had no authority to sign any other payroll checks. MCL 46.13b; MSA 5.336, empowers the *board* to appoint the controller, by a majority vote of its members-elect. In this case, the controller was apparently hired by a subcommittee of the board, and the full board never formally ratified that action. However, the subcommittee which effected the hiring was composed of all the members of the board. By acting as a subcommittee, it was suggested, the board was able to circumvent the requirement that all board meetings be public. MCL 15.263; MSA 4.1800(13).[2] In any event, until the controller's appointment was formally ratified through the board's "official resolutions and proceedings, [and] recorded in its official minutes", the action of the subcommittee was apparently a nullity. *Crain v Gibson,* 73 Mich App 192, 200; 250 NW2d 792 (1977), *lv den* 400 Mich 828 (1977).

## IV

Failing our acceptance of the defendants' position on the above questions, it is argued that the clerk's statutes, MCL 46.4 and 46.5; MSA 5.324 and 5.325, are unconstitutional because they were enacted in violation of Const 1963, art 4, § 24, the title-object clause, or because they were repealed by implication when § 13b was enacted. We reject both claims.

1851 PA 156, as amended, is entitled "an act to define the powers and duties of the boards of supervisors of the several counties, and to confer upon them certain local, administrative and legis-

---

[2] It is noted in this regard that meetings at which applicants for employment or appointment to a public office are interviewed must also be public. MCL 15.268(f); MSA 4.1800(18)(f).

lative powers; and to prescribe penalties for the violation of the provisions of this act". Section 4 of the act designates the county clerk as clerk of the board of commissioners and sets forth his duties in that regard. Section 5 provides that the books and accounts of the board are to be kept in the clerk's office, but are open to public inspection under the Freedom of Information Act. As these two provisions are "germane, auxiliary to, or incidental to the general purpose of the act", *Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917), because they speak to the custody and control of documents which the board is required to keep, there is thus no violation of Const 1963, art 4, § 24.

Neither do we find a repeal by implication. Repeals by implication are not favored, *Yarger v City of Hastings,* 375 Mich 413, 417; 134 NW2d 726 (1965), nor presumed. *Covert Twp Assessor v State Tax Comm,* 53 Mich App 300, 304; 218 NW2d 807 (1974), *aff'd* 407 Mich 561 (1980). Such a construction is to be avoided, if any reasonable construction of the statute permits such a result. *Loose v Dearborn Heights,* 24 Mich App 87, 89; 180 NW2d 105 (1970). The favored construction, as noted earlier, is one which gives effect to every section of the act. *Melia v Employment Security Comm, supra.*

Our analysis of the interrelationship of §§ 4 and 5 and § 13b, *supra,* is a reasonable interpretation of the statute which gives effect to all three sections. There is no basis on which to premise a finding that § 13b repealed §§ 4 and 5, by implication or otherwise.

## V

Finally, we find that the trial court did not err in appointing a special prosecutor to represent the

plaintiff. MCL 49.153; MSA 5.751 provides that the prosecutor shall prosecute or defend all civil suits in which the county may be interested. Here, the county was interested in the suit by plaintiff against the county board of commissioners and the county controller. Further, by the time the lower court appointed a special prosecutor, the county prosecutor had elected to represent the board and controller in defense of plaintiff's claims. Clearly, he could not also represent plaintiff under such circumstances. Consistent with MCL 49.160(1); MSA 5.758(1), the trial court's appointment of a special prosecutor was proper.

On review of defendants' claims on appeal we find no error. The judgment and orders of the lower court are therefore affirmed.

Affirmed. No costs, a public question being involved.