926 P.2d 911 (1996)
130 Wash.2d 615
Dedra J. OSBORN, Grant County Clerk, Respondent,
v.
GRANT COUNTY By and Through the GRANT COUNTY COMMISSIONERS, Petitioner,
Gordon E. Harris, Grant County Clerk, Intervenor.
No. 63161-1.
Supreme Court of Washington, En Banc.
Argued March 26, 1996.
Decided November 27, 1996.
*912 John D. Knodell III, Grant County Prosecutor, Ephrata, for Petitioner.
McCormick Dunn & Black, Robert A. Dunn, Keller W. Allen, Spokane, Jeffrey C. Sullivan, Yakima County Prosecutor, John V. Staffan, Deputy, Yakima, for Respondent.
DOLLIVER, Justice.
The Grant County Board of Commissioners appeals from a Court of Appeals decision affirming a superior court's grant of declaratory *913 relief to Dedra Osborn, a former Grant County Clerk. The Court of Appeals upheld the appointment of a private law firm as a special prosecutor for Osborn, and the court found that the Grant County Board of Commissioners had improperly interfered with the clerk's absolute right to choose employees for the clerk's office. We affirm the declaratory relief, but we reverse the appointment of a special prosecutor.
On July 7, 1993, Dedra Osborn, the elected Grant County Clerk, hired Shirley Keenan as a temporary employee in the clerk's office for a 10-day period. The clerk's office had been budgeted funds for hiring temporary employees at the beginning of the 1993 fiscal year, and that budget contained sufficient funds to pay for Keenan's 10-day employment. Shirley Keenan normally worked for the district court, but the district court judges had placed Keenan on a disciplinary 10-day suspension without pay. Keenan's temporary work for Osborn was performed during Keenan's 10-day suspension from her district court job. By July 8, 1993, the Grant County Board of Commissioners had learned of Keenan's working for Osborn, and the Board sent Osborn a letter. In the letter the Board disapproved of Osborn's hiring Keenan while Keenan was on suspension from her district court job. The letter expressed the Board's intent not to authorize payment of Keenan's wages for hours accrued after receipt of the Board's letter.
After receiving the Board's letter, Osborn asked the county prosecutor for advice on the Board's power to decline payment of Keenan's wages and interfere with Osborn's hiring decisions. The county prosecutor refused to give Osborn advice on the matter because of a potential conflict with the Board. Osborn then retained the law firm of McCormick, Dunn & Black, P.S., to represent her.
Keenan continued to work for the full 10-day period. She was only paid for 12 hours of work, at the rate of $8.00 an hour. Osborn submitted a pay voucher to the county auditor for the remainder of Keenan's wages. On August 19, 1993, the auditor sent Osborn a letter stating that the auditor would not pay out those wages because the Board refused to authorize the voucher. Keenan is still owed $544.00 for 68 hours of work.
On September 9, 1993, Osborn brought an action for declaratory judgment against the Board. Besides requesting a declaration of her right to hire whomever she wanted as a temporary clerk, Osborn also requested that the law firm she hired be appointed as a special prosecutor. After several hearings, the superior court entered a judgment in favor of Osborn on January 18, 1994. The court held that the Board had no authority to interfere with Osborn's hiring decisions, and it enjoined the Board from engaging in such future conduct. The court appointed McCormick, Dunn & Black, P.S., as special prosecutor for Osborn and awarded $19,103.12 in attorney fees. Finally, the court ordered the county to pay Keenan's remaining wages.
The Board appealed from the judgment. Before the Court of Appeals heard the case, Osborn lost her bid for re-election as the county clerk. The race for her seat was widely publicized, and Osborn's involvement with this lawsuit was a leading issue in the race. Despite losing the office of county clerk, Osborn continued to defend her lawsuit in the Court of Appeals. Osborn's successor, Gordon E. Harris, was allowed to intervene in the action.
The Court of Appeals sustained the superior court judgment, and awarded Osborn additional attorney fees generated by defending the appeal. Osborn v. Grant County (part unpublished), No. 13833-0-III, June 22, 1995 (part published), 78 Wash.App. 246, 896 P.2d 111 (1995). The record does not reveal the total amount of attorney fees requested by Osborn's attorney for the appellate work, but the case file contains one letter written by Osborn's attorney indicating an amount of $49,121.25 owing as of March 8, 1995an amount which presumably included the superior court's award of $19,103.12. The Board sought review by this court, and the petition for review was granted. Osborn v. Grant County, 128 Wash.2d 1001, 907 P.2d 296 (1995).
The central issue in this case involves the Board's attempt to interfere with Osborn's hiring of a temporary employee. Once a board of county commissioners creates *914 and funds a position in a county office, does the board then have the power to control who the elected county officer hires for that position?
In its briefs and in oral argument before this court, the Board claimed a collective bargaining agreement prevented Keenan from working in any other county department while on disciplinary leave from her district court position. This claim has no merit. In two different hearings before the superior court judge, the Board's attorneys admitted that no such agreement prevented Osborn's hiring of Keenan.
THE [superior] COURT: Okay. Does Grant County have any kind of agreement between their officials that they have to that one office has to abide by the hiring and firing of another office?
MR. HALLSTROM [deputy prosecuting attorney]: Not that I'm aware of.
THE COURT: All right. Do they have any agreements that say that one office's disciplining of an employee has to be recognized by the other offices within Grant County?
MR. HALLSTROM: Not that I'm aware of.
Report of Proceedings at 52 (Dec. 14, 1993). During the January 4, 1994, hearing, the judge presented the same question to Mr. Knodell, the Grant County Prosecutor.
THE COURT: Is there something in [the collective bargaining agreement] that says they can'tone official can't hire temporary help if somebody else has been suspended from a different department?
MR. KNODELL: No, your Honor....
Report of Proceedings at 22 (Jan. 4, 1994). Defendants admitted to the superior court that no agreement expressly prevented Osborn from hiring Keenan. Despite these earlier admissions, Defendants now boldly argue before this court that Osborn's act violated some agreement. The court record contains a copy of two collective bargaining agreements, but Defendants have not cited to any page in either agreement wherein Osborn's hiring of Keenan is disallowed. Additionally, one agreement covers employees working for the Board and numerous specified county departments, including the clerk's office. The district court judges, however, have a separate agreement with their employees. Any disciplinary action against Keenan pursuant to the bargaining agreement with the district court judges had no effect on the Grant County Clerk, who was not a party to that separate agreement.
The Board also asserts it has jurisdiction over other elected officials' hiring decisions under RCW 36.16.070, which states:
In all cases where the duties of any county office are greater than can be performed by the person elected to fill it, the officer may employ deputies and other necessary employees with the consent of the board of county commissioners. The board shall fix their compensation and shall require what deputies shall give bond and the amount of bond required from each. The sureties on deputies' bonds must be approved by the board and the premium therefor is a county expense.
A deputy may perform any act which his principal is authorized to perform. The officer appointing a deputy or other employee shall be responsible for the acts of his appointees upon his official bond and may revoke each appointment at pleasure.
Defendants argue RCW 36.16.070 "expressly and unequivocally required the consent of the Grant County Commissioners, either explicit or implicit, before [Osborn] hired Keenan." Pet. for Review at 15.
The first paragraph of RCW 36.16.070 allows county officers, "with the consent of the board of county commissioners," to hire extra deputies or employees if necessary to perform the duties of the office. The board sets the salary of the employees. It is clear from this paragraph that the board has the power to create and fund employee positions in county offices. It is not clear from the first paragraph whether the board has any power over who fills those employee positions.
The second paragraph of RCW 36.16.070 resolves the ambiguity. The last sentence makes clear that the county officer is the one to appoint a deputy or other employee, and the officer has the power to revoke each appointment at pleasure. This sentence excludes any mention of the board; thus, the *915 board has no role in those hiring decisions. Once the board has created and funded the positions for needed deputies or employees, the county officer is the party who names the individuals to fill those positions.
This reading of RCW 36.16.070 is supported by an early decision by this court which construed two former statutes which used much of the language found in the current version of RCW 36.16.070. See Thomas v. Whatcom County, 82 Wash. 113, 143 P. 881 (1914). Thomas is directly on point with the facts of this case. Thomas was the elected sheriff of Whatcom County. The board of county commissioners refused to pay the salaries of the sheriff's three deputies because the board objected to the three particular individuals named for those positions. The board did not deny that the sheriff's office was allowed three deputies. The sheriff sued the board of commissioners on the grounds that the board's refusal to pay constituted an impermissible interference with the sheriff's power to hire deputies.
Thomas looked at two statutes. The first statute listed the different county offices and then stated:
"And in all cases where the duties of any office are greater than can be performed by the person elected to fill the same, said officer may employ, with the consent of the county commissioners, the necessary help, who shall receive a just and reasonable pay for services. The officer appointing such deputies or clerks shall be responsible for the acts of such appointees upon his official bond."
Thomas, 82 Wash. at 121, 143 P. 881 (quoting from Rem. & Ball.Code§ 4032, enacted by Laws of 1890, ch. 10, § 2, p. 304). A second statute provided for the salaries to be paid to county officers and deputies, and it stated, in part:
"That in case the salaries herein provided for are, in the judgment of the board of county commissioners, inadequate for the services required of the officers named herein, then the said board of county commissioners may allow such officer a deputy, or such number of deputies as, in their judgment, may be required to do the business of such office in connection with the principal, for such time as may be necessary, and at such salary as they may designate...."
Thomas, 82 Wash. at 122, 143 P. 881 (quoting from Rem. & Ball.Code § 4065, enacted by Laws of 1890, ch. 10, § 32, p. 312). Thomas read these statutes and determined three things:
First, that the number of deputies was to be determined by the board; second, that the salaries were to be fixed by the board; and third, that the officer had the right to determine who the deputy, assistant, or clerk should be.

Thomas, 82 Wash. at 122, 143 P. 881 (emphasis added). Thomas held that, once the board has authorized the hiring of deputies in a county office, "the officer in whose office the deputies are to serve, being responsible on his bond for their conduct, has the absolute right to determine the personnel of such deputies...." Thomas, 82 Wash. at 124, 143 P. 881 (emphasis added).
The current language of RCW 36.16.070 is nearly identical to the portion of section 4032 of the Remington and Ballinger Code construed by Thomas. "The Legislature is presumed to know existing case law in areas in which it is legislating." In re Foreclosure of Liens, 117 Wash.2d 77, 86, 811 P.2d 945 (1991). Since RCW 36.16.070 continues to use the same language as that interpreted by Thomas, we will follow Thomas `reading of that language.
The superior court found that the Grant County Clerk's office had a budget fund entitled "Extra Clerk Hire" for the hiring of temporary employees. "There was $17,724 appropriated and approved by the Grant County Commissioners for `Extra Clerk Hire' in the budget for fiscal year 1993," and when Osborn hired Keenan there were sufficient funds remaining in that budget to cover Keenan's wages. Clerk's Papers at 387. Defendants have not contested this finding. Given the unchallenged findings that the clerk's office was authorized and funded to hire temporary employees, Osborn had a right to hire Keenan, and the Board has no authority to interfere with that decision.
*916 Defendants claim our reading of RCW 36.16.070 violates public policy. Defendants argue the Board should have some say in the irresponsible hiring decisions of elected officials. Otherwise, the Board would have no recourse if an "official hire[d] a convicted embezzler, active drug dealer, or pedophile in a county office to work directly with the public at large." Pet. for Review at 14. Defendants' concerns are misguided. If an official makes a poor hiring decision, the official is accountable not to the board of commissioners, but to the public. If the public dislikes Dedra Osborn's hiring of Keenan, the ballot is its recourse. Such may have been the case when the public voted Osborn out of office after the controversy over the hiring of Keenan was publicized.
We affirm the Court of Appeals and superior court in holding that the Board has no authority to interfere with an elected county officer's hiring decisions. Absent that authority, the Board improperly withheld Keenan's wages, and we affirm the order requiring payment of those wages.
The second critical issue in this case involves whether McCormick, Dunn & Black, P.S., was properly appointed as a special prosecutor for Osborn and awarded attorney fees by the superior court. The court can appoint a special prosecutor to represent a party only when two conditions are met. First, the prosecutor must have the authority and the duty to represent that party in the given matter. Second, some disability must prevent the prosecutor from fulfilling that duty. Westerman v. Cary, 125 Wash.2d 277, 298, 885 P.2d 827, 892 P.2d 1067 (1994); RCW 36.27.030. See also Hoppe v. King County, 95 Wash.2d 332, 339-40, 622 P.2d 845 (1980). If the prosecutor has no duty or authority to represent a party, the trial court cannot appoint special counsel.
The Grant County Prosecutor concedes he was prevented from representing Osborn because of her conflict with the position taken by the Board. This satisfies the second condition for appointing a special prosecutor. However, the prosecutor argues that the first condition is not metthe prosecutor claims he has no duty to bring litigation on behalf of a county officer against the county.
This court has previously ruled on the issue of a prosecutor's duty to bring a civil lawsuit on behalf of a county officer. In Hoppe v. King County, we held:
[N]othing in the duties of the prosecuting attorney (RCW 36.27.020) requires that officer to bring an action simply because a request is made by another county officer or to provide legal representation. While RCW 36.27.020(2) does require the prosecuting attorney to "[b]e legal adviser to all county ... officers", this is not a requirement that the prosecuting attorney appear for or represent a county officer.
Hoppe, 95 Wash.2d at 339-40, 622 P.2d 845 (citing Bates v. School Dist. 10, 45 Wash. 498, 88 P. 944 (1907)). Under Hoppe, the Grant County Prosecutor had no affirmative duty to sue the county on behalf of the county clerk.
In some cases, courts have required prosecutors to represent county officers when the county or State, though unnamed in the action, was a real party in interest. See Fuqua v. Fuqua, 88 Wash.2d 100, 104, 558 P.2d 801 (1977) (state was an interested party in dispute over distribution of child support moneys held by court clerk); In re Lewis, 51 Wash.2d 193, 201-02, 316 P.2d 907 (1957) (county and state were real parties in interest where juvenile probation officer filed delinquency petition against a juvenile). Osborn cannot claim the right to representation by the prosecutor under the "real party in interest" theory, because her lawsuit and her interests are inimical to the county's intereststhe county is the named defendant in her lawsuit.
Hoppe and Bates imply that a prosecutor has the authority to bring civil lawsuits on behalf of county officers, with the ultimate decision being left to the prosecutor's discretion. See Fisher v. Clem, 25 Wash.App. 303, 307, 607 P.2d 326 (1980). Some cases exist where prosecutors appear to have exercised their discretion and brought legal action on behalf of county officers. See, e.g., Clark County Sheriff v. Department of Social & Health Servs., 95 Wash.2d 445, 626 P.2d 6 (1981) (prosecutor represented county sheriff in a mandamus action against the Department *917 of Social and Health Services); Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 658 P.2d 648 (1983) (prosecutor filed an appeal against the civil service commission on behalf of the sheriff). The law is unclear, however, on whether a trial court could appoint special counsel in situations where the prosecutor has no affirmative duty but still has the authority and the discretion to bring litigation for a county officer. We need not reach this question, since, as will be discussed below, we find the Grant County Prosecutor had no authority to bring the civil lawsuit on behalf of Osborn because her proposed suit was directed against the county.
When looking at the statutorily created office of prosecuting attorney, we think it is clear the Legislature did not authorize nor contemplate the prosecutor representing a party in a lawsuit against the county. Even though prosecuting attorneys are independently elected county officers, RCW 36.16.030, their powers are limited to those expressly granted by statute. Bates v. School Dist. 10, 45 Wash. 498, 501, 88 P. 944 (1907). The Grant County Prosecutor cannot represent a party in a lawsuit against the county unless statutorily authorized to do so. We find no statute allowing for such representation.
Amongst other enumerated duties, prosecutors are authorized to represent the county, RCW 36.27.005; they are required to advise the county board of commissioners or legislative authority on any matter concerning county affairs, RCW 36.27.020(1); and they are required to represent the county in all criminal and civil proceedings in which the county may be a party, RCW 36.27.020(3), (4). These statutes essentially require the prosecutor to maintain a certain degree of allegiance to the county commissioners, insofar as the county commissioners are the body that exercises county "powers," RCW 36.01.030, and adopts the official county position on legal issues, RCW 36.32.120(6). See, e.g., Prentice v. Franklin County, 54 Wash. 587, 103 P. 831 (1909); cf. Harter v. King County, 11 Wash.2d 583, 119 P.2d 919 (1941).
In Prentice a landowner, in the attempt to reclaim his property, sued the county to vacate a tax foreclosure and judgment against the property. The county commissioners and the landowner entered a stipulated judgment, which was finalized by the superior court, wherein the owner paid certain fees to the county and the county conveyed the property back to the owner. The county prosecutor, against the wishes of the commissioners, filed an appeal to the stipulated judgment. This court dismissed the appeal:
Although the prosecuting attorney is the legal adviser of the county he is not authorized to prosecute this appeal in opposition to the orders of the board of county commissioners.
Prentice, 54 Wash. at 590-91, 103 P. 831. See also Spokane County v. Bracht, 23 Wash. 102, 62 P. 446 (1900) (prosecuting attorney has no authority to bring an action in the name of a county against the county commissioners).
Harter presented the inverse situation. In Harter the county prosecutor approved a stipulated judgment in an action involving two landowners, the state, and the county to establish the proper border of a street. The county commissioners later attempted to vacate the judgment on the theory that the prosecutor could not approve the settlement without the express authority of the board. This court disagreed, holding that the board, when it remains silent on a particular matter, "is bound by the bona fide representation of the county by the prosecuting attorney, who derives his primary authority, not from the board, but from the statutes." Harter, 11 Wash.2d at 595, 119 P.2d 919.
While the prosecutor certainly must have some degree of independence and discretion as legal counsel for the county, the enumerated duties under RCW 36.27 cannot be read so broadly as to allow the prosecutor to be legal counsel for a party in a lawsuit against the county. If the Legislature intended prosecutors to have the authority to sue the county, it should have expressly granted such authority.
We do recognize, however, that other statutes, in certain and limited circumstances, may allow for such representation to occur. See, e.g., Nichols v. Snohomish County, 109 *918 Wash.2d 613, 746 P.2d 1208 (1987) (prosecutor was expressly required by RCW 73.16.061 to represent a veteran seeking reemployment after returning from active military dutythe employer happened to be the county). We find no special statute allowing the prosecutor to represent Osborn in this case.
Since the Grant County Prosecutor could not represent Osborn in her action because the county was the named defendant, the superior court had no authority to appoint a special prosecutor for Osborn. Since the appointment of a special prosecutor was improper, we also reverse the superior court's award of over $19,000 in attorney fees.
Even if we were to uphold the appointment of the special prosecutor, we would not have allowed the claimed attorney fees. After a trial court appoints a special prosecutor, the court must insure the requested fees are reasonable, under the factors enumerated in RPC 1.5. Westerman v. Cary, 125 Wash.2d 277, 301-02, 885 P.2d 827, 892 P.2d 1067 (1994). One of the several factors listed is "[t]he amount involved in the matter on which legal services are rendered and the results obtained[.]" RPC 1.5(a)(4). The only economic harm resulting from the Board's ultra vires act was the $544 in unpaid wages to Shirley Keenan. The Board caused no apparent economic harm to Osborn, and the Board's refusal to pay Keenan caused no serious disruption in the operation of the county clerk's office. Despite this lack of severe harm, Osborn's attorneys generated around $19,000 in fees for work done in front of the superior court, and no trial was ever held. The superior court issued its final judgment after several short hearings were conducted. The amount of attorney fees requested by McCormick, Dunn & Black, P.S., is excessive, given the nature of the legal dispute in this case.
Although the prosecutor had no authority to litigate this action for Osborn, the prosecutor did have a statutory duty under RCW 36.27.020(2) to be legal advisor to Osborn. The prosecutor refused to fulfill this duty when Osborn asked him for advice on the Board's letter. When the prosecutor refused to advise Osborn, the prosecutor should have appointed a special or temporary deputy under RCW 36.27.040 to advise Osborn. John Knodell, the Grant County Prosecutor, even conceded this point in oral argument. When questioned by this court during rebuttal, he admitted the possibility that the county could be responsible for Osborn's costs incurred when she sought advice from a private law firm.
Immediately after the prosecutor refused to advise Osborn, she did hire a private law firm to help her deal with the conflict with the Board. Insofar as the law firm's work for Osborn consisted of giving advice about her conflict with the Boardstatutorily required work which the prosecutor refused to performwe will allow Osborn an award of attorney fees for that work.
The Clerk's Papers contain the billing records of Osborn's law firm, enabling us to determine the exact amount of attorney fees to allow for all advice rendered prior to the initiation of this lawsuit. The billing records show that Robert Dunn, Osborn's attorney, researched the law concerning Osborn's conflict with the Board; he drafted numerous letters to the prosecutor's office with the purpose of resolving the conflict amicably and avoiding litigation; and he also billed for numerous conferences and telephone conversations with Osborn. All these activities appear to fall within the realm of giving advice. The first bill for activities directed toward litigation appears on August 19, 1993, when Mr. Dunn drafted the complaint. All subsequent entries in the billing records appear to be directed toward the lawsuit. We award Osborn $2,449.41 in attorney fees for all of the advisory work done by her attorney prior to his drafting the complaint on August 19, 1993.
Osborn never requested costs and statutory fees since she had relied upon the lower court's erroneous appointment of a special prosecutor; nonetheless, we award Osborn her costs and statutory attorney fees under RCW 4.84.030 and RCW 4.84.080. Cf. State ex rel. Maltbie v. Will, 54 Wash. 453, 459, 103 P. 479, 104 P. 797 (1909) (county clerk brought successful action against commissioners who withheld clerk's wages *919 court awarded statutory attorney fees). The primary issue in this action concerned the Board's interfering with Osborn's hiring authority, and Osborn is the prevailing party with respect to that issue.
Osborn also requested attorney fees for litigating this appeal under RAP 18.1. RAP 18.1 only allows attorney fees on review if applicable law grants it. We allow Osborn recovery of costs and statutory attorney fees for this appeal under RCW 4.84.030 and RCW 4.84.080.
Defendants have raised several other procedural issues which will be discussed only briefly. First, Defendants argue Osborn could not initiate this action in her official capacity as Grant County Clerk; yet Defendants did concede Osborn could maintain the action as a private citizen. Osborn's use of her official title in the case caption is a red herring. The important issue is whether Osborn has standing. As the county clerk, Osborn had the legal right to "employ deputies and other necessary employees" to carry out the functions of her elected office. RCW 36.16.070. This legal right was violated by the Board's refusal to pay Keenan's wages. Osborn had standing to initiate this legal action. Orion Corp. v. State, 103 Wash.2d 441, 455, 693 P.2d 1369 (1985) ("To have standing, one must have some protectable interest that has been invaded....").
Defendants also dispute whether declaratory judgment was an appropriate action for the dispute between Osborn and the Board. The Uniform Declaratory Judgments Act is designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." RCW 7.24.120; Clallam County Deputy Sheriff's Guild v. Board of Clallam County Comm'rs, 92 Wash.2d 844, 848, 601 P.2d 943 (1979). Declaratory judgment is appropriate when the four elements of a justiciable controversy are present. There must be:
(1) ... an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

Ronken v. Board of County Comm'rs, 89 Wash.2d 304, 310, 572 P.2d 1 (1977) (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wash.2d 811, 815, 514 P.2d 137 (1973)).
Osborn's conflict with the Board satisfied the four elements. When she brought the action, there was an actual, present, and existing dispute. Even though Osborn was voted out of office during the Board's appeal from the superior court's judgment, this controversy involves matters of continuing and substantial public interest, and our "determination is desirable to provide future guidance to public officers...." Westerman v. Cary, 125 Wash.2d 277, 286, 885 P.2d 827, 892 P.2d 1067 (1994). See also Smith v. Board of Walla Walla County Comm'rs, 48 Wash.App. 303, 306, 738 P.2d 1076 (1987) (agreeing to hear the appeal in a county auditor's case against the board even though the auditor was voted out of office after the superior court's judgment).
The second element of a justiciable controversy is satisfied by this case. Osborn and the Board clearly have genuine and opposing interests, with each claiming control over the clerk's office employees. The adversarial parties in this case claim interests which are direct and substantial, thereby satisfying the third element. Finally, this court's determination of the issue will be final and conclusive, meeting the fourth element of a justiciable controversy. Osborn's request for a declaratory judgment is appropriate in this case.
The last procedural issue raised by Defendants involves the timeliness of Osborn's declaratory judgment action. Defendants attempted to raise this affirmative defense in the superior court, but the superior court treated the attempt as a motion to amend the pleadings and denied the motion. The Court of Appeals considered the defense nonetheless.
*920 Defendants claim Osborn forfeited her right to challenge the Board's decision by failing to appeal from that decision within 20 days as required by RCW 36.32.330. The statute states, in part:
Any person may appeal to the superior court from any decision or order of the board of county commissioners. Such appeal shall be taken within twenty days after the decision or order....
RCW 36.32.330. Numerous cases construing this statute have attempted to delineate the circumstances in which the time limit applies. See, e.g., Cathcart-Maltby-Clearview Community Council v. Snohomish County, 96 Wash.2d 201, 205, 634 P.2d 853 (1981); Ronken v. Board of County Comm'rs, 89 Wash.2d 304, 309, 572 P.2d 1 (1977); State ex rel. Stephens v. Odell, 61 Wash.2d 476, 480, 378 P.2d 932 (1963); Ocosta Consol. Sch. Dist. 123 v. Grays Harbor County, 44 Wash.2d 525, 268 P.2d 663 (1954). It is unclear from those cases whether RCW 36.32.330 applied to Osborn's conflict with the Board.
The Court of Appeals held, without citing legal authority, that the statutory time limit for appeals did not apply to void acts by the Board. We cannot sustain the Court of Appeals' reasoning on this issue; rather, we will settle the matter on the facts of the case.
Assuming, without so holding, that RCW 36.32.330 applies to this case, Osborn complied with the 20-day deadline. Osborn submitted a pay voucher to the county auditor for Keenan's wages. On August 19, 1993, the auditor sent a letter to Osborn saying the Board would not authorize Keenan's wages; thus, the auditor would not pay out those funds. Osborn filed her Summons and Complaint on September 9, 1993, which was 21 days after the auditor refused to pay the voucher. The 20th day fell on a Sunday, thus filing on the Monday thereafter complied with the 20-day limit. See RCW 1.12.040.
Compared to the auditor's August 19, 1993, letter, the Board's letter of July 8, 1993, does not qualify as a final decision. The July 8 letter was merely precatory. The letter implied that the Board would not allow Keenan to work for Osborn, and it stated that the Board would not authorize Keenan's wages. However, as of July 8, 1993, Osborn had not yet submitted a pay voucher for Keenan's wages. The Board's decision did not become fully realized until the pay voucher was submitted and refused. That refusal occurred on August 19, 1993, and the 20-day limit was met.
We affirm the declaratory judgment and injunction preventing the Board of Commissioners from interfering with other county officers' hiring decisions. The Board must also pay Keenan's wages. We reverse the appointment of a special prosecutor, and attorney fees will be allowed only as noted above in this decision.
SMITH, MADSEN, ALEXANDER and TALMADGE, JJ., concur.
SANDERS, Justice (concurring in part, dissenting in part).
I concur with the majority except insofar as it disallows an award of reasonable attorney's fees for litigation from public funds to the special prosecutor. In Washington, before the appointment of a special prosecutor can be justified, the county prosecutor "must have both a duty to represent an official and a disability that prevents the prosecutor from representing the official." Westerman v. Cary, 125 Wash.2d 277, 298, 892 P.2d 1067 (1994); RCW 36.27.030. The majority holds that while the county prosecutor in this case was indeed disabled from representing the county clerk, he never had a duty to undertake such representation to begin with. The majority therefore concludes that because no duty existed, the superior court had no authority to appoint a special prosecutor and award attorney's fees. However, county prosecutors do have the authority to appear for and represent county officers in litigation and, in certain circumstances, the county prosecutor is the proper representative of county officials, and "authority" in this context means "duty." Accordingly, I would affirm the award of attorney's fees, and award additional attorney's fees for this appeal.
As a preliminary matter, county prosecutors have represented county officials in the *921 past when these officials initiate a suit. See, e.g., Fuqua v. Fuqua, 88 Wash.2d 100, 104, 558 P.2d 801 (1977) (county prosecutor properly appeared for and represented the county clerk in clerk's suit seeking a lawful distribution of funds paid into the clerk's office); In re Lewis, 51 Wash.2d 193, 201-02, 316 P.2d 907 (1957) (county prosecutor had a duty to represent probation officer in his suit); Ridder v. Department of Revenue, 43 Wash.App. 21, 25, 714 P.2d 717 (1986) (county prosecutor represented county assessor in assessor's petition against State Department of Revenue); Van Buren v. Miller, 22 Wash.App. 836, 592 P.2d 671 (county prosecutor represented county assessor in suit against landowners), review denied, 92 Wash.2d 1021 (1979). There are also numerous cases where county prosecutors have represented county officials who are defendants in suits. See, e.g., Westerman, 125 Wash.2d 277, 892 P.2d 1067 (county prosecutor represented district court judge); Hearst Corp. v. Hoppe, 90 Wash.2d 123, 580 P.2d 246 (1978) (county prosecutor defended county assessor in suit under public disclosure act); Loveridge v. Schillberg, 17 Wash.App. 96, 561 P.2d 1107 (1977) (county prosecutor defended himself in mandamus suit). Under the reasoning of the majority, however, county prosecutors who have litigated these actions have acted beyond the scope of their "duty" and should not have been compensated with public funds.
Substantively, the majority loses its way in its understanding of the nature of the "duties" referenced in RCW 36.27.020. Our case law recognizes a duty (in the sense of authority) for county prosecutors to represent county officials when the claims of these officials have merit and these claims relate to their official duties.
The majority's narrow interpretation of RCW 36.27.020 runs contrary to precedent and practice. "The authority of the prosecuting attorney to appear in actions which present issues concerning county officials and their operation of county departments has been broadly construed in this state." Fuqua, 88 Wash.2d at 102, 558 P.2d 801. Indeed, In re Lewis and Westerman v. Cary appear to stand for the proposition that a county prosecutor should represent county officials if county interests are implicated.[1]
Case law has also recognized the authority of the prosecutor to represent a county official in litigation where the county is not a named party but is nevertheless the "real party in interest." Black's defines a "Real party in interest" as "the one who is actually and substantially interested in [the] subject matter...." Black's Law Dictionary 1264 (6th ed.1990). In Westerman we determined that the county was the real party in interest in the dispute between the district court and the public defender's office because "it [was] the organ ultimately impacted" by the outcome.[2]Westerman, 125 Wash.2d at 299, 892 *922 P.2d 1067. The statute creates an affirmative duty for the county prosecutor to represent the county in any action in which it may be a party. RCW 36.27.020(4). Thus, the county prosecutor was the proper representative in Westerman because it was the county that was "the one who [was] actually and substantially interested in [the] subject matter." Black's Law Dictionary, supra.
The majority claims the elected county clerk of Grant County cannot sue the county concerning the scope of her duties as a county official and be compensated for legal representation at public expense because the county is the named defendant in her lawsuit. This is an artificial distinction at best, one that essentially ascribes to the Grant County board of commissioners Louis IV's claim that "L'etat c'est moi."[3] The question in this case is not whether the county is a named party, but it is whether the county is the real party in interest. The majority fails to adequately explain why Grant County is not the "organ ultimately impacted" (Westerman, 125 Wash.2d at 299, 892 P.2d 1067) by the dispute between the Grant County clerk and the Grant County board of commissioners. Further, the majority presents no explanation as to why Grant County was not actually and substantially interested in a suit between its clerk and its board of commissioners over the board's ultra vires interference with the clerk's hiring discretion.
It is clear from the facts of this case the appointment of a special prosecutor was warranted when the county prosecutor was disabled, and this special prosecutor properly exercised his discretion to proceed with the clerk's suit which was initiated out of concern for the appropriate functioning of county government. However, the majority holds that the clerk must finance litigation to insure government compliance with the law out of her private resources.
Further, the majority errs in asserting that the absence of a statutory mandate to bring suit means that county prosecutors have no authority to initiate lawsuits on behalf of county officials. While the majority permits the clerk to recover fees attributable to the advisory duties performed by the special prosecutor, it does not sufficiently differentiate between the discretionary authority county prosecutors possess to represent county officials and the mandatory duty to give legal advice imposed by RCW 36.27.020. Because the majority fails to make this distinction, it misreads the holding in Hoppe v. King County, 95 Wash.2d 332, 339, 622 P.2d 845 (1980) which primarily addresses the prosecutor's discretion to bring a suit once such a suit has been requested by an official. In Hoppe there was no discretionary right to bring suit because there was no standing. Id. In finding that the county prosecutor had no duty to bring such a suit, we stated:
[N]othing in the duties of the prosecuting attorney (RCW 36.27.020) requires that officer to bring an action simply because a request is made by another county officer or to provide legal representation. While RCW 36.27.020(2) does require the prosecuting attorney to "[b]e legal adviser to all county ... officers", this is not a requirement that the prosecuting attorney appear for or represent a county officer.
Id. at 339-40, 622 P.2d 845 (emphasis added) (citation omitted). This language holds true: the county prosecutor had no duty to bring a suit representing a plaintiff who did not have standing to sue. In fact, he had a duty not to do so. This does not necessarily mean, however, that the county prosecutor had no duty to bring such a suit if the plaintiff had standing and the prosecutor, acting within his discretion, thought that bringing suit was advisable.
The Court of Appeals has recognized that a county prosecutor does not have a mandatory duty to initiate a suit simply because one is requested by a county official; however, it does not rule out the authority to commence and litigate a suit as a matter of *923 discretion. In Fisher v. Clem, 25 Wash.App. 303, 607 P.2d 326 (1980), the court brought out the distinction:
RCW 36.27.020 does not specifically compel the prosecutor to bring any civil suit. If it were construed in that manner, the prosecutor might, at the insistence of any county officer, be required to violate both his oath as an attorney and the Code of Professional Responsibility, both of which preclude the counseling or maintaining of frivolous suits. (CPR) DR 7-102(A)(2). We therefore hold that the prosecutor's maintenance of any civil proceedings under RCW 36.27.020 is discretionary. Bates v. School Dist. 10, 45 Wash. 498, 88 P. 944 (1907).
Id. at 307, 607 P.2d 326 (footnote omitted).
The interpretation of the statute adopted by the majority in the present case presents a false dichotomy between a prosecuting attorney never representing a county official in litigation and a prosecuting attorney violating his oath by always representing a county official when so requested. Nothing in the statute or in the case law interpreting that statute requires such a conclusion. The duty of a county prosecutor to represent county officials in litigation pursuant to Westerman and Lewis and the statutory duty to represent the county must, of course, be tempered by the prosecutor's judgment. In the case of conflicting statutes, they must be read together to give each effect and to harmonize each with the other. Bour v. Johnson, 122 Wash.2d 829, 835, 864 P.2d 380 (1993). I, therefore, disagree with the majority that the inclusion of a mandatory duty to advise county officials in the statute necessitates the exclusion of a discretionary authority to represent county officials in litigation.
Finally, the majority, in an unnecessary and gratuitous section, in light of its resolution of the other issues in the case, declares the attorney's fees requested by the special prosecutor "excessive." Although it offers no proof when it concludes the special prosecutor overbilled, the majority can only justify its decision by pointing to the fact that the damages in this case were relatively small, citing RPC 1.5(a)(4). However, using the sum in dispute as the sole factor in determining attorney's fees ignores the other factors listed in that rule, such as the "time and labor required, [and] the novelty and difficulty of the questions involved...." RPC 1.5(a)(1). Here, the issues were complex and unsettled, and it is reasonable to assume they consumed a good deal of both the special and county prosecutors' time. The county prosecutor had no such monetary restraints on his ability to litigate the issues and it is unfair for the clerk, the prevailing party, to be forced to personally fund a claim involving the proper function of county government.
In conclusion, I would hold that the law firm retained by the county clerk, and appointed by the court, was entitled to represent her as a special prosecutor, as was the elected prosecutor, because of the disability of the county prosecutor. The statute provides a county clerk is entitled to legal representation from a special prosecutor at public expense. Accordingly, I dissent from the reversal of an award of attorney's fees.
DURHAM, C.J., and JOHNSON, J., concur.
NOTES
[1] This was the conclusion arrived at by the Michigan Court of Appeals in a case remarkably similar to the one currently before us. In Gogebic County Clerk v. Gogebic County Board of Comm'rs, 102 Mich.App. 251, 301 N.W.2d 491, 498-99 (1980), the county clerk brought a mandamus action against the county controller ordering the return of all books, records, and accounts taken from the clerk's office by the controller and against the board of commissioners ordering the return to the clerk of all duties and adequate funding for the office. The trial court appointed a special prosecutor to represent the plaintiff clerk after the county prosecutor elected to represent the board and the controller in defense of the clerk's claims. The Michigan statute provided that the prosecutor shall prosecute or defend all civil suits in which the county may be interested. The court of appeals held that the appointment of the special prosecutor was appropriate because "the county was interested in the suit by plaintiff [county clerk] against the county board of commissioners and the county controller." Id. 301 N.W.2d at 499.
[2] This reasoning was adopted by the Court of Appeals in Neal v. Wallace, 15 Wash.App. 506, 550 P.2d 539 (1976). There the petitioner applied for a writ of mandamus directing the superior court to allow him to proceed in forma pauperis. The individually named respondent, presumably the judge who denied the request, was represented by the prosecuting attorney. The Court of Appeals, in holding that the prosecuting attorney was appropriately representing the judge, stated:

As a preliminary matter, we hold that the prosecuting attorney is the proper court representative of the Superior Court judge. It is the duty of a prosecuting attorney to represent the county or state in any action to which either is a party. A superior court judge occupies a dual position as both state officer and county officer, and is thus entitled to representation by the prosecutor in either or both capacities. The prosecuting attorney is also the proper court representative of the county itself in this case, the county being the ultimate source of payment of waived fees and thus the real party in interest.
Id. at 507-08, 550 P.2d 539 (footnotes omitted).
[3] "I am the state."